Charles D. BAILEY and Dayton N. Barker, on Behalf of themselves and all others similarly situated, Plaintiffs,

and

Wesley C. Jensen et al., Plaintiff-Intervenors,

v.

PIPER, JAFFRAY & HOPWOOD, INC., Defendant.

No. 4–74 Civ. 173.

United States District Court, D. Minnesota, Fourth Division.

June 3, 1976.

Terence M. Fruth and Timothy M. Heaney, Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman, Minneapolis, Minn., for plaintiffs Bailey and Barker.

Gordon B. Conn, Jr., and Timothy D. Kelly, Faegre & Benson, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

This action for violation of the Securities Exchange Act of 1934 is now before the court upon motion of the defendant for summary judgment or partial summary judgment on the grounds that plaintiffs' claims are barred by the applicable statute of limitations.

 Plaintiffs, who are all individuals, allege that the defendant Piper, Jaffray & Hopwood, Inc. (hereinafter PJH), while acting in its capacity as a broker-dealer, made various misrepresentations and omissions and engaged in a scheme to defraud in connection with its sale to plaintiffs of stock in North American Resources Corporation. Plaintiffs' action is founded upon § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17

C.F.R. § 240.10b–5, promulgated thereunder. Since the 1934 Act and Rule 10b–5 contain no statute of limitations governing 10b–5 claims, federal district courts apply the appropriate limitations period of the forum state, *United Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Vanderboom v. Sexton*, 422 F.2d 1233, 1239 (8th Cir.) *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970).

The late Judge Philip Neville of this court held in *Klapmeier v. Peat, Marwick, Mitchell & Co.*, 363 F.Supp. 1212 (D.Minn. 1973), that the appropriate statute of limitations for 10b–5 actions arising in Minnesota was Minn.Stat. § 541.05(6) which is a six-year limitation provision for actions based on fraud.[1]

Under normal circumstances, the principle of *stare decisis* would weigh heavily in favor of simply following the *Klapmeier* decision. However, since that case was decided, significant changes have occurred in the area of securities law which compel a reexamination of the choice of an appropriate limitations provision.

*Klapmeier* applied the controlling law of the Eighth Circuit, *Vanderboom v. Sexton, supra,* in choosing the fraud statute of limitations. *Vanderboom* set forth the standard for determining which of several local limitation provisions should be applied stating:

> The basic standard for determining which of the various local periods of limitation to utilize is that it should be 'one which best effectuates the federal policy at issue.' *Charney v. Thomas*, 372 F.2d 97, 100 (6th Cir. 1967).

422 F.2d at 1237.

In determining which limitations provision best effectuated the federal policy involved, the court in *Vanderboom* stated that it was appropriate to examine the local statute which bears the closest resemblance

1. Minn.Stat. § 541.05 provides in relevant part: Except where the uniform commercial code otherwise proscribes, the following actions shall be commenced within six years:

. . . . .

(6) For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

to Rule 10b–5. *Id.* at 1237–1238. After making that examination, the court adopted the statute of limitations which applied to the private remedy provision under the forum state's (Arkansas) blue-sky law and rejected the limitations provision for common law fraud. *Id.* at 1240. In reaching its conclusion the court looked to the commonality of purpose and similarity of defenses available under both 10b–5 and the state blue-sky law. *Id.* at 1238–1240.

The significant issue involving the similarity of defenses was the element of "scienter." The Eighth Circuit stated that actions under both Rule 10b–5 and the state blue-sky law would arise no matter if the misrepresentations were intentional or negligent. *Id.* at 1238 (citing *Myzel v. Fields,* 386 F.2d 718, 734–735 (8th Cir. 1967), *cert. denied,* 396 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), for the proposition that Rule 10b–5 applies to negligent as well as intentional misrepresentations). However, under Arkansas law (the state law considered by the court), an action for common law fraud would lie only if scienter or intentional misrepresentation was proved. 422 F.2d at 1239. Therefore the court chose the limitations provisions which applied to the state cause of action which did not require scienter—the blue-sky law—and rejected the limitations provision for common law fraud. *Id.* at 1240.

Likewise in *Klapmeier, supra,* the district court placed important reliance on the issue of scienter in choosing the common law fraud statute of limitations to govern 10b–5 litigation arising in Minnesota. In examining the similarity of elements under Minnesota common law fraud and Rule 10b–5, the court stated:

> However, the most important similarity between Minnesota common law fraud and a 10b–5 action in the Eighth Circuit is that neither action requires a showing of scienter. *Myzel v. Fields, [supra]* [other citations omitted]

363 F.Supp. at 1218.

The court went on to conclude that there were no great dissimilarities between Min-

nesota fraud law and Eighth Circuit 10b–5 law and thus the Minnesota fraud statute of limitations was appropriate. *Id.* at 1219.

Very recently the Eighth Circuit reaffirmed the *Vanderboom* analysis in *In Re Alodex Corporation Securities Litigation,* 533 F.2d 372 (8th Cir. filed March 24, 1976), while holding that the two-year statute of limitations of the Iowa Blue Sky law governed 10b–5 litigation arising in Iowa. The court stated:

> *Vanderboom v. Sexton, supra,* viewed two factors to be significant in determining which particular state statute of limitations should be applied in a Rule 10b–5 case: (1) does the state statute share a common purpose with Rule 10b–5, and (2) does the state statute permit the assertion of substantially the same defenses that are available in a Rule 10b–5 case?

*Id.* at 373.

The court went on to say:

> As to the second prong of the *Vanderboom* case, it is necessary to examine what defenses are allowed in the state cause of action relied upon by the various parties as establishing the appropriate statute of limitations. If there is a manifest minimization of assertible defenses available in a particular state cause of action which is analogous to Rule 10b–5, the statute of limitations for that cause of action should be applied since it would more closely approximate the federal policy and proof requirements of Rule 10b–5. *Vanderboom v. Sexton,* supra, at 1238–40. *This inquiry and conclusion are compelled because this court has held that scienter need not be proved in a Rule 10b–5 case to establish liability. Myzel v. Fields, [supra]* [emphasis added]

*Id.* at 373.

Six days later the Supreme Court held in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976), that a private cause of action for damages under § 10(b) and Rule 10b–5 will not lie in the absence of any

allegation of scienter.[2] In so holding, the Court specifically overruled *Myzel v. Fields, supra,* the acknowledged authority in the Eighth Circuit for the proposition that scienter was not required in 10b–5 cases. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. at 4454, n. 12.

*Myzel* was the cornerstone of the second factor analyzed in *Vanderboom,* i. e., lack of defenses, and also had a significant effect in *Klapmeier.* This court now concludes that *Klapmeier's* result of choosing the fraud statute of limitations, with its important reliance on the lack of scienter in comparing Rule 10b–5 and common law fraud can no longer be followed. In addition, the importance of the second factor of the *Vanderboom* analysis is itself diminished. The inquiry into the area of defenses was compelled because of the now-overruled Eighth Circuit's position of not requiring scienter. *In Re Alodex, supra,* at 374. Nonetheless, elements of *Vanderboom* remain for determining the appropriate statute of limitations.

■ The basic standard of *Vanderboom* for choosing the appropriate limitations provision—that which best " 'effectuates the federal policy at issue' "—still stands after *Hochfelder.* Also remaining is the exhortation of *Vanderboom* to ". . . look to the local statute which bears the closest resemblance to the federal statute involved." 422 F.2d at 1237.

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud.

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

The various limitation provisions which conceivably could be applicable to the state remedy which bears the closest resemblance to Rule 10b–5 are *Minn.Stat.* § 80A.23, Subd. 7; § 80.26; § 541.07(5); and § 541.-05(6). Each statute will be examined individually.

*§ 80A.23, Subd. 7.*

On May 21, 1973, the Minnesota Legislature enacted a comprehensive version of the Uniform Securities Act, *Minn.Stat.* § 80A.01, *et seq.,* Laws 1973, ch. 451 (hereinafter "Uniform Securities Act") which became effective on August 1, 1973 and thereby repealed the Minnesota Blue Sky Law, *Minn.Stat.* § 80.01 *et seq.* (hereinafter "Minnesota Blue Sky Law"). § 80A.01 is almost identical to Rule 10b–5[3] and § 80A.23, Subd. 2 expressly provides that a violation of .01 shall create a civil action. § 80A.23,

---

2. For purposes of clarification it should be noted that the Court in a footnote stated:

In this opinion the term "scienter" refers to a mental state embracing intent to deceive, manipulate, or defraud. In certain areas of the law recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act. We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5.

425 U.S. 193, 96 S.Ct. at 1381, 44 U.S.L.W. at 4454, n. 12.

3. *Minn.Stat.* § 80A.01 states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, nor misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Subd. 7 establishes a uniform three-year period of limitation for civil actions including an action based on a violation of § 80A.01.

All purchases of stock involved in the present litigation occurred between August 10, 1967, and July 19, 1971, but this action was not commenced until March 29, 1974. When enacting the Uniform Securities Act the Minnesota Legislature specifically included a transitional provision which states in relevant part:

> Prior law exclusively governs all suits, actions, prosecutions, or proceedings which are pending or may be initiated on

4. Since the transactions giving rise to this case occurred from August 10, 1967, to July 19, 1971, the court must deal with two separate versions of § 80.26, which was amended in 1969. The earlier version, § 80.26 (1941), had a six-year limitation and the later version, § 80.26 (1969), had a three year limitation for sales occurring after May 29, 1969. Otherwise the two versions are identical.

§ 80.26 (1941) provides:

*80.26 Limitation of actions; exceptions*

No action shall be maintained for relief upon a sale of securities made in violation of any of the provisions of sections 80.05 to 80.27, or upon a sale of securities made in violation of any of the provisions of a registration thereunder, or for failure to disclose that the sale thereof was made in violation of any of these provisions or in violation of any of the provisions of a registration thereunder, or upon any representation with respect to the registration or non-registration of the security claimed to be implied from any such sale, unless commenced within six years after the date on which the securities were delivered to the purchaser pursuant to such sale; provided, that if, prior to the effective date of this section, more than five years shall have elapsed from the date of such delivery, then such action may be brought within a period of one year following such effective date, and provided, that no purchaser of a security otherwise entitled thereto shall bring any action for relief of the character above set forth who shall have refused or failed, within 30 days after the receipt thereof by such purchaser, to accept a written offer from the seller or from any person who participated in such sale to take back the securities in question and to refund the full amount paid therefor by such purchaser, together with interest on such amount from the date of payment to the date of repayment, such interest to be computed at the same rate as the fixed interest or dividend rate, if

the basis of facts or circumstances occurring before August 1, 1973.

Laws 1973, ch. 451, § 32.

■ Since this is an action which could have been "initiated on the basis of facts or circumstances occurring before August 1, 1973," the court concludes that the Uniform Securities Act with its limitation provision as contained in § 80A.23, Subd. 7 is inapplicable to the present case. *See Mooney v. Tallant*, 397 F.Supp. 680, 681 n. 2 (N.D.Ga. 1975).

§ 80.26

*Minn.Stat.* § 80.26 is the statute of limitation provision contained in the Minnesota Blue Sky Law, *Minn.Stat.* § 80.01 *et seq.*[4]

any, provided for in such securities, or, if no rate is so provided, at the rate of six per centum per annum, less in every case the amount of any income received by the purchaser of a security shall be of no force or effect unless a duplicate thereof shall be filed with the commissioner of securities prior to the delivery thereof to such purchaser.

Nothing in this section, except as herein expressly set forth, shall limit any other right of any person to bring any action in any court for any act involved in or right arising out of a sale of securities or the right of the state to punish any person for any violation of law.

§ 80.26 (1969) provides:

*80.26 Limitations of actions; exceptions.* No action shall be maintained for relief upon a sale of securities made in violation of any of the provisions of sections 80.05 to 80.27, or upon a sale of securities made in violation of any of the provisions of a registration thereunder, or for failure to disclose that the sale thereof was made in violation of any of these provisions or in violation of any of the provisions of a registration thereunder, or upon any representation with respect to the registration or non-registration of the security claimed to be implied from any such sale, unless commenced within three years after the date on which the securities were delivered to the purchaser pursuant to such sale; provided, that an action with respect to a sale made prior to May 29, 1969 may be commenced within six years after the date on which the securities were delivered to the purchaser pursuant to such sale, and provided, that no purchaser of a security otherwise entitled thereto shall bring any action for relief of the character above set forth who shall have refused or failed, within 30 days after the receipt thereof by such purchaser, to accept a written offer from the seller or from any person who participated in such

It was repealed along with the rest of the Minnesota Blue Sky Law as of August 1, 1973. However, it is appropriately considered by the court since the transitional provision of the Uniform Securities Act would deem the Blue Sky Law controlling under the facts of the present case. Laws 1973, ch. 451 § 32. No single provision of the Blue Sky Law is identical to Rule 10b–5. However, it is apparent that various provisions are directed towards the prevention of fraud.

Minn.Stat. § 80.37 provides in relevant part:

*Violations; penalties*

. . . . .

Subd. 2. Whoever shall, with fraudulent intent, sell, or cause to be sold, or in any manner participate directly or indirectly in the sale of any stocks, bonds, investment contracts, or securities, as defined in section 80.01, pursuant to any scheme or artifice to defraud, or by means of false or fraudulent pretenses, representations, or promises, including fraudulent promises as to the worth of earnings of such stock in the future, or by means of any false or fictitious financial statement or representations as to the worth thereof, or otherwise, shall be guilty of a felony; and upon conviction thereof punished in the same manner as upon conviction for obtaining money under false pretenses.

§ 80.37 closely parallels Rule 10b–5. Both provisions specifically relate to securities fraud; both refer to sales of securities; both prohibit schemes or artifices to defraud; and both also speak of false or untrue statements or untrue representations in broad terms.

Although § 80.37 does not specifically authorize private civil damage actions for violations neither does 10b–5 expressly create a civil action. However, it is likely that § 80.37 gives rise to an implied private right of action.[5]

Minnesota law specifically provides:

The provision in any law for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such law.

Minn.Stat. § 645.23. *See also Restatement of Torts (Second)* §§ 286–88C (1965).

Other provisions of the Minnesota Blue Sky Law which are relevant to the facts of the present case are: § 80.12, Subd. 2 (an anti-fraud provision relevant to the withdrawal of licenses from broker-dealers making fraudulent sales of securities) and § 80.-13 (an anti-fraud provision relevant to the withdrawal of licenses from registered agents making fraudulent sales of securities). *See also* § 80.19 (a provision concerned with false statements or misleading acts; however it is directed only towards registration and not sales).

■ It was well established that a sale of stock not registered pursuant to the provi-

---

sale to take back the securities in question and to refund the full amount paid therefor by such purchaser, together with interest on such amount from the date of payment to the date of repayment, such interest to be computed at the same rate as the fixed interest or dividend rate, if any, provided for in such securities, or, if no rate is so provided, at the rate of six percent per annum, less in every case the amount of any income received by the purchaser on such securities. Any written offer so made to a purchaser of a security shall be of no force or effect unless a duplicate thereof shall be filed with the commissioner of securities prior to the delivery thereof to such purchaser.

Nothing in this section, except as herein expressly set forth, shall limit any other right

of any person to bring any action in any court for any act involved in or right arising out of a sale of securities or the right of the state to punish any person for any violation of law.

5. *Klapmeier's* reference to the interpretation of § 80.37, 363 F.Supp. at 1215–16, is not entirely correct. The case cited, *Drees v. Minnesota Petroleum Co.*, 189 Minn. 608, 250 N.W. 563 (1933), interpreted 1 Mason's Minn.St.1927, § 3996–22, which was a narrow penalty provision. The broad antifraud provision of § 80.37, Subd. 2 did not come into existence until 1933. Laws 1933, ch. 408 § 15; 1 Mason's Minn.St., 1933, § 3996–29. The court's research has not disclosed any cases construing Subd. 2 in a civil action context.

sions of the Minnesota Blue Sky Law constituted an illegal sale entitling the purchaser to recover the purchase price of the stock. *Shepard v. City Co. of New York*, 24 F.Supp. 682, 684 (D.Minn.1938) (citing *Vercellinni v. U.S.I. Realty Company*, 158 Minn. 72, 196 N.W. 672 (1924); *Webster v. U.S.I. Realty Company*, 170 Minn. 360, 212 N.W. 806 (1927); *Drees v. Minnesota Petroleum Company*, 189 Minn. 608, 250 N.W. 563 (1933)).

*Shepard v. City Co. of New York, supra,* stated that the action to recover the purchase price of unregistered stock was an action in tort and that the basis of the tort was fraud. 24 F.Supp. at 684. The court further stated:

> The fraud consisted of sale of corporate stock to the plaintiff without divulging to him that it was not registered as required by the Minnesota law. * * * When an express provision of the law is violated, in a sale of securities subject to registration under the Blue Sky Law, the term "fraud" is an appropriate characterization of the disobedience.

24 F.Supp. at 684–85.

■ Although the Minnesota Blue Sky Law did not have any precise counterpart to Rule 10b–5 it is the statutory scheme which bears the closest resemblance to the federal securities law. The evidenced intent of the legislature to prevent fraud in dealings of securities through a statutory scheme specifically concerned with securities is sufficient to accord it a "commonality of purpose"[6] with the federal securities laws. Moreover, as indicated above, a violation of the Blue Sky provisions was the basis of an action for fraud in the sale of securities.

**6.** A term borrowed from *Vanderboom v. Sexton, supra,* at 1240. Unlike the "lack of defenses" inquiry of *Vanderboom,* the consideration of "commonality of purpose" has survived *Hochfelder* unscathed and is a compelling factor in the present case.

**7.** This court (Judge Joyce), in analyzing the cause of action created by a violation of the Blue Sky Law, once stated:

Minn.Stat. § 80.26 with its six year limitation provision was first enacted in 1941. Laws 1941, ch. 547, § 18. Prior to its enactment the six year fraud limitation of Mason's Minn.St. § 9191 (the predecessor to Minn.Stat. § 541.05(6)) was applied to civil actions based on violations of the Blue Sky Law. *See Shepard v. City Co. of New York, supra.*

The dissatisfaction of the Legislature with the Minnesota Supreme Court's application of the general fraud limitation provision has been attributed as the prompting force behind the enactment of § 80.26 which provided a specific limitation provision for actions based on a violation of the Blue Sky Law. *Donaldson v. Chase Securities Corp.,* 216 Minn. 269, 273, 13 N.W.2d 1, 3 (1943), *aff'd Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

Even though § 80.26 does not explicitly mention § 80.37 as a provision to which it is applicable, the general intent of the legislature to provide a specific limitation for fraud in the sale of securities and the nature of the actions which were founded on the Blue Sky Law strongly indicate that it would be the proper limitation provision to apply to any action based solely on § 80.37.

In addition, since a general thrust of the Minnesota Blue Sky Law is to prevent fraud[7] in the dealings of securities it is appropriate to give strong consideration to the statute of limitations specifically created for the statutory scheme concerned with securities.

■ In applying the resemblance test in this context, it should also be noted that Rule 10b–5 applies only to fraud in securities transactions. Fraud, no matter how heinous, is not cognizable under Rule 10b–5

> It would seem to follow axiomatically that refusal to comply with *the law designed to prevent fraud* is of a species of fraud. [citations omitted] [emphasis added]
>
> *Stern v. National City Co.,* 25 F.Supp. 948, 957 (D.Minn.1938), *aff'd sub nom., City Co. of New York v. Stern,* 110 F.2d 601 (8th Cir. 1940), *rev'd on other grounds,* 312 U.S. 666, 61 S.Ct. 823, 85 L.Ed. 1110 (1941).

unless it is attendant upon the purchase or sale of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Hence, resemblance must be determined not by reference to general state anti-fraud provisions, but by reference to *securities* fraud. Accordingly, many if not most courts which have considered the question have looked to the state blue sky provisions respecting limitation of actions for violations of the state securities regulations. *See Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir. 1974); *Parrent v. Midwest Rug Mills*, 455 F.2d 123 (7th Cir. 1972); *Mooney v. Tallant*, 397 F.Supp. 680 (N.D.Ga.1975); *Hitchcock v. deBryne*, 377 F.Supp. 1403 (D.Conn.1974); *Kramer v. Loewi & Co., Inc.*, 357 F.Supp. 83 (E.D.Wis.1973); *Corey v. Bache Co., Inc.*, 355 F.Supp. 1123 (S.D.W.Va.1973); *Maine v. Leonard*, 353 F.Supp. 968 (W.D.Va.1973).

The court concludes that the remedies available under the Minnesota Blue Sky Law bear a sufficiently close resemblance to the federal securities law to justify the application of § 80.26 as the controlling limitation provision of this lawsuit.

The Eighth Circuit indicated in *In Re Alodex, supra*, that the inquiry into the defenses allowed under the state cause of action analogous to Rule 10b–5 was

> . . . compelled because this court has held that scienter need not be proved in a Rule 10b–5 case to establish liability. [citation omitted]

533 F.2d at 373.

Because of the paucity of cases dealing with the Minnesota Blue Sky Law, the court cannot authoritatively state what all the elements and defenses for a civil action based on such law might have been. Furthermore, since the law is now repealed, no additional cases will arise to construe it. However, the court does not feel that this paucity should prevent the application of the limitation provision of the Minnesota

Blue Sky Law to the present case where, as here, the common purpose of the federal and state securities laws are clearly evident.

■ In 1969, the Minnesota Legislature changed the limitation period of § 80.26 from six years to three years. 1969 Laws ch. 848, § 10. This amendment essentially bifurcates plaintiffs' claims.[8] However, adoption of § 80.26 as the limitation provision for 10b–5 litigation will result in a three year limitation period for transactions occurring after May 29, 1969 and will provide for a smooth transition for the limitation period to be applied in future litigation when the *Vanderboom* test will undoubtedly result in the application of the three year limitation of § 80A.23 Subd. 7 of the Uniform Securities Act. More importantly, for transactions occurring after 1969 the three year limitation will reflect the federal policy favoring short limitations. *See Nickels v. Koehler Management Corp.*, 392 F.Supp. 804, 807–08 (N.D.Ohio 1975).

### § 541.07(5)

PJH has argued for the adoption of Minn. Stat. § 541.07(5) as the applicable statute of limitation for 10b–5 litigation. Such statute provides:

> Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:
>
> .    .    .    .    .
>
> (5) For the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties. (The term "wages" as used herein shall mean all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, where the relationship of master and servant exists and the term "damages," as used herein,

---

**8.** Since the plaintiffs' purchases of stock occurred from August 10, 1967 to July 19, 1971, the claims in this action will be subject to two separate limitation periods. All those purchases occurring before May 29, 1969 will be subject to a six year limitation and those occurring after that date will be subject to a three year limitation.

shall mean single, double, or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists);

§ 541.07(5) is a general catch-all limitations provision and does not bear a sufficient resemblance to Rule 10b–5 to justify its application. *Klapmeier* rejected its application and for the reasons stated therein this court still rejects it as the appropriate statute. 363 F.Supp. 1216–17.

PJH has alternatively argued that if § 541.07(5) is rejected standing alone that it nonetheless should be considered as the applicable statute because it arguably is the proper limitation provision governing a civil action based on § 80.37. Such contention must be rejected for two reasons. First, the implied civil action for fraud which was created based on the illegal sale of unregistered stock existed even without the fraudulent intent language of § 80.37. *See Drees v. Minnesota Petroleum Co., supra.* Thus the court does not look solely to § 80.37 to determine the appropriate limitation provision. Second, the history of the development of § 80.26 which reflects a strong desire to provide a specific limitation for fraud actions based on the sale of securities indicates that it would be highly unlikely for a general catch-all provision to control one section of the Blue Sky Law. *See Donaldson v. Chase Securities Corp., supra.*

## § 541.05(6)

The general fraud statute of limitation, which was adopted by the court in *Klapmeier*, must also be rejected. The changes in the law of scienter in 10b–5 cases in the Eighth Circuit as a result of *Hochfelder* substantially erode the rationale of the court. A reworking of the *Vanderboom* resemblance test has shown a sufficient similarity between the Minnesota Blue Sky Law and the federal securities law, and clearly a commonality of purpose, to justify the application of the Blue Sky Law's limitation provision to this action.

## TOLLING

The limitations provision of § 80.26 by its terms begins to run with the date of the delivery of the stock and does not provide for any tolling of the running of the statute from that event until the fraud is discovered. Compare Minn.Stat. § 541.05(6). However, an action brought under federal law which is subject to a state statute of limitations is still governed by the equitable tolling doctrine pursuant to federal law. *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). The Court in *Holmberg* set forth the standard governing federal actions stating

. . . where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence on his part, the bar of the statute does not begin to run until the fraud is discovered though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from knowledge of the other party.'

327 U.S. at 397, 66 S.Ct. at 585, quoting *Bailey v. Glover*, 21 Wall (U.S.) 342, 22 L.Ed. 636 (1875).

The Eighth Circuit embraced the *Holmberg* rule in *Vanderboom, supra*, where after an analysis of the tolling issue the court stated:

. . . the remedial policy expressed by Congress in enacting the securities legislation would best be served by making any statute of limitations run only from the date the fraud upon reasonable inquiry should have been discovered.

422 F.2d at 1240.

PJH contends that since plaintiffs did not specifically plead the avoidance of the statute of limitations that they cannot avail themselves of the tolling doctrine. This court is opposed to such a harsh interpretation of pleading. Plaintiffs in good faith relied on the law of *Klapmeier* providing for a six year limitation period which allowed them sufficient time to file an action without being concerned about tolling. The court will freely grant plaintiffs leave to amend their complaint to include an alle-

gation of tolling. Further, contrary to PJH's contention, this court is not now in a position to rule as a matter of law as to when plaintiffs upon reasonable inquiry should have discovered the alleged fraud so as to negate any allegation of tolling.

Upon the foregoing,

IT IS ORDERED That defendant's motion for summary judgment or partial summary judgment be and the same hereby is in all respects denied.