**Norman A. KOPPERUD, et al.,**
**Respondents,**

v.

**Joe S. AGERS, et al., defendants and third party plaintiffs, Appellants,**

**Clyde DINNELL, Sr., et al., defendants and third-party plaintiffs,**

v.

**Gerald FLABY, third-party defendant, Respondent.**

**No. 50806.**

Supreme Court of Minnesota.

Nov. 25, 1981.

Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog, Minneapolis, for appellants.

M. John Steward, Rochester, for Kopperud, et al.

O'Brien, Ehrick, Wolf, Deaner & Downing and Steve S. Fuller, Rochester, for respondents.

SHERAN, Chief Justice.

This case comes before us on the appeal of defendant W. Shelley Richey from an order denying his motion to dismiss for lack of personal jurisdiction and on the following certified question: "Whether equity may operate to toll the running of the statutory bar established by Minn.Stat. § 80.26 (1971), of an action alleging a violation of Chapter 80 of the Minnesota Statutes, when the party bringing such an action has alleged the fraudulent concealment of the basis for such an action." We affirm the trial court's assertion of personal jurisdiction over defendant and answer the certified question in the negative, holding that fraudulent concealment of a claim under Minn.Stat. ch. 80 (1971) does not toll the statute of limitations contained in that chapter.

Plaintiffs are investors in defendant Thunderbird Valley, Inc. (Thunderbird), an Arizona land development corporation. In March 1978 they commenced this suit against Thunderbird and the individual members of its management team alleging violations of state and federal securities laws and fraud. The complaint states that during 1971 and 1972 plaintiffs and their assignors made loans to Thunderbird in the total amount of $116,685. It further alleges that the promissory notes given in return for the loans stated that they were secured by real estate mortgages when in fact they were not. Thunderbird is bankrupt and only defendants W. Shelley Richey and Joe S. Agers answered. They denied the allegations.

In July 1979 Richey and Agers moved for summary judgment on the state securities law claims on the ground that the statute of limitations had expired. They alternatively requested permission to serve a third-party complaint on Gerald Flaby, the broker who made the actual sales to plaintiffs and their assignors. Richey, in addition, moved for dismissal due to lack of personal jurisdiction. The trial court denied the motion for summary judgment, allowed the third-party complaint, and denied the motion to dismiss. Subsequently the trial court reconsidered its ruling on the statute of limitations and certified the question as important and doubtful. This appeal followed.

We first consider whether the district court erred by concluding that plaintiffs had made a prima facie showing that exercise of personal jurisdiction over defendant Richey was proper under our long-arm statute and the due-process clause. Minn.Stat. § 543.19, subd. 1(c) (1976) permits assertion of jurisdiction over a nonresident individual who commits any tort in Minnesota causing injury or property damage. Plaintiffs allege that Richey committed tortious fraud in Minnesota by failing to disclose that the mortgaged real estate was inadequate security for the notes when he had special knowledge of that fact. *See Klein v. First Edina National Bank*, 293 Minn. 418, 196 N.W.2d 619 (1972). Since corporate officers are personally liable to third persons for their fraudulent acts, the allegedly tortious conduct must be said to be Richey's for purposes of the statute. In our view, from a long-arm standpoint, this case is factually similar to *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970), where corporate and individual defendants conspired to convert the assets of an insurance company whose policyholders were primarily Minnesotans. In construing our long-arm statute we stated: "Once participation in a tortious conspiracy—the effect of which is felt in this state—is sufficiently established, actual physical presence of each of the alleged conspirators is not essential to a valid assertion of jurisdiction." 285 Minn. at 109, 172 N.W.2d at 311.

■ Our long-arm statute, however, does not confer jurisdiction whenever a tort is committed by a nonresident. In *Hunt* we stated that the legislature intended the statute to reach only as far as constitutional limitations permit. 285 Minn. at 109, 172 N.W.2d at 311. The due-process clause requires that "minimum contacts" exist between the defendant and the forum state. We consider five factors in determining the fairness of asserting personal jurisdiction: (1) the quantity of contacts with the forum; (2) the nature and quality of the contacts; (3) the connection between the contacts and the cause of action; (4) the state's interest

in providing a forum; and (5) convenience. *Hardrives, Inc. v. City of LaCrosse, Wisconsin*, 307 Minn. 290, 240 N.W.2d 814 (1976). Recent decisions of the United States Supreme Court emphasize the importance of the first three of these. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

Richey had no contacts with Minnesota other than those giving rise to this lawsuit. He was a shareholder, director, and officer of Thunderbird and also served as its general counsel. Although his activities occurred in Arizona, they were directed toward attaining a commercial benefit in Minnesota. Richey met with Flaby, the individual who brokered the investments, and discussed with him how to transact sales of Thunderbird investments. Richey knew that Flaby was selling notes and mortgages in Minnesota, and he was personally involved in determining the amounts of the mortgages and in drafting the note and mortgage documents. Richey also corresponded with at least two Minnesota attorneys regarding treatment of Thunderbird notes and mortgages for probate purposes. At no time did he disclose that the real estate securing the mortgages was of little value, that some of the mortgagors were fictitious and others had defaulted, and that the Securities and Exchange Commission was claiming violations of federal law.

■ This is not a case of an isolated or unforseeable contact with Minnesota. Richey purposefully availed himself of this state to carry out a scheme to defraud investors. Although his direct contacts with this state were limited, he was instrumental in setting in motion the fraudulent scheme and in keeping it going. The cause of action arises directly out of the fraudulent transactions. Minnesota has an obvious interest in providing a forum since Minnesotans were defrauded. Moreover, convenience considerations are inconclusive because significant acts occurred both here and in Arizona. Under these circumstanc-

es, we agree with the district court that plaintiffs have made a prima facie showing of sufficient Minnesota activities to satisfy due process.

We next consider whether equity tolls the statute of limitations for causes of action based on securities law violations when the plaintiffs allege that defendants fraudulently concealed the violations. Minn.Stat. § 80.26 (1971) provides:

> No action shall be maintained for relief upon a sale of securities made in violation of any of the provisions of sections 80.05 to 80.27, or upon a sale of securities made in violation of any of the provisions of a registration thereunder, or for failure to disclose that the sale thereof was made in violation of any of these provisions or in violation of any of the provisions of a registration thereunder, or upon any representation with respect to the registration or non-registration of the security claimed to be implied from any such sale, unless commenced within three years after the date on which the securities were delivered to the purchaser pursuant to such sale.

It is undisputed that absent applicability of an equitable doctrine, plaintiffs' suit is barred since it was commenced nearly 5 years after delivery of the last notes and mortgages.

The parties focus their attention on *Bailey v. Piper, Jaffray & Hopwood, Inc.,* 414 F.Supp. 475 (D.Minn.1976). There the issue was whether federal securities law violations, which are governed by the appropriate limitations period of the forum state, were controlled by Minn.Stat. § 80.26 (1971), the blue-sky provision, or by Minn. Stat. § 541.05, subd. 1(6) (1971), the general fraud statute. The court determined that section 80.26 bore the closer resemblance to federal securities law in terms of subject, purpose, and remedy. It declined, however, to apply section 80.26 according to its terms as running from the date of delivery of the stock with no provision for tolling. Instead it utilized the federal law doctrine of equitable tolling which provides that where a plaintiff has been injured by fraud and remains in ignorance of it, through no fault or want of diligence on his part, the statute does not begin to run until the fraud is discovered even though the other party makes no effort to conceal the fraud. 414 F.Supp. at 484. Although the court refers to the principle applied as "equitable tolling," technically it relates to the accrual of the cause of action for purposes of the commencement of the statute's running.

As the court observed in *Bailey,* section 80.26 specifically sets delivery of the securities as the event commencing the running of the statute and it makes no mention of any circumstances that will toll it. That the legislature was aware of the possibility of adopting a "discovery rule" for accrual of a cause of action is evident from the limitations provision governing common-law fraud. "For relief on the ground of fraud * * * the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Minn.Stat. § 541.05, subd. 1(6) (1971). From the failure to incorporate this rule in section 80.26, we must presume that the legislature did not intend it to operate in blue-sky cases. *See Interlox Punch & Die Corp. v. Insilco Corp.,* 174 N.J.Super. 175, 415 A.2d 1208 (1980). When new rights are created by statute, they may be limited as the legislature sees fit so long as constitutional principles are obeyed. Here the plaintiffs have stated a timely cause of action for common-law fraud which they are entitled to pursue regardless of their securities law claims and which was unavailable to the *Bailey* plaintiffs in the federal system. Thus, they are not without a remedy.

We are also mindful that regardless of when a cause of action accrues, we have followed the rule that fraudulent concealment of that cause of action will prevent the running of the statute of limitations. *Schmucking v. Mayo,* 183 Minn. 37, 235 N.W. 633 (1931). That rule is necessary to achieve the result in nonfraud cases that the "discovery rule" achieves in fraud cases. The theoretical difference is that when the suit is for fraud, the statute does not begin

to run until discovery, but when the suit is for another claim, the statute begins to run from the wrong but is tolled by defendant's fraudulent conduct. Just as we have concluded that the legislature did not intend the discovery rule for accrual purposes, we conclude that it did not intend the fraudulent concealment rule for tolling purposes. Section 80.26 specifically limits actions for "failure to disclose that the sale * * * was made in violation of any of these [blue-sky] provisions" to 3 years from the date of delivery. In our view this language expressly excludes the fraudulent concealment exception usually applied. *See Martin v. Pacific Insurance Company of New York*, 245 Ark. 122, 431 S.W.2d 239 (1968). The certified question is answered in the negative.

Affirmed and remanded.

AMDAHL, J., took no part in the consideration or decision of this case.