**BELLBOY SEAFOOD CORPORATION,**
**Respondent,**

v.

**KENT TRADING CORP., d/b/a**
**Al Kent Sales, Defendant,**

**Quality Fish, Appellant.**

**No. C5–91–300.**

Court of Appeals of Minnesota.

Aug. 13, 1991.

Review Granted Sept. 25, 1991.

Steven M. Bell, Eden Prairie, for respondent.

Carolyn J. Trevis, Krause & Rollins, Chartered, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant challenges the trial court's exercise of personal jurisdiction and its denial of appellant's motion to amend the findings of fact. We affirm and remand.

## FACTS

Respondent Bellboy Seafood Corporation (Bellboy) is a Minnesota-based supplier of fish and other seafood products. Appellant Quality Fish (Quality) is a New York wholesaler/distributor of fish products. North American Shellfish is a seafood company also located in New York. Florida-based Kent Trading is a broker that arranges purchases of seafood for its clients.

Bellboy alleged in its complaint that Kent Trading negotiated a transaction on behalf of Quality in which Quality agreed to purchase $12,833.10 worth of orange roughy fish from Bellboy. In her affidavit, Sandra Gray, the Bellboy credit manager, alleged that before Bellboy agreed to ship the fish on credit, Bellboy requested credit information from Quality. In response to the request, Quality provided one bank reference and five trade references. Gray personally asked Mono Marinello, Quality's president, to direct his bank to release credit information to Bellboy. Marinello agreed. Based on the information, Bellboy extended credit and shipped the fish. On May 8, 1990, the same day that credit was extended, Bellboy sent a written confirmation of the order to Quality. The confirmation, addressed to Quality at its Port Washington, New York office, directed that the goods be shipped to North American Warehouse at 3 Railroad Avenue, Bayshore, Long Island, New York. Quality did not notify Bellboy that it should not ship the fish. The straight bill of lading accompanying the shipment refers to the order number on the confirmation and states that the destination for the goods was as follows:

Quality Fish
c/o No American Shellfish
3 Railroad Avenue
Bayshore, LI, NY

PO 25564

The fish were delivered to the North American Shellfish address. Bellboy maintains that Quality and North American Shellfish are affiliated. Quality, however, refuses to make payment for the fish, denies that it authorized Kent Trading to purchase fish from Bellboy and denies any legal relationship with North American Shellfish. Quality does not maintain an office in Minnesota

and does not distribute its products in the state.

Both Quality and Kent Trading were served with process pursuant to the Long Arm Statute. Minn.Stat. § 543.19 (1990). When neither Kent nor Quality answered, Bellboy obtained a default judgment against Kent Trading on October 3, 1990. On the same date, Quality filed an answer and a motion to dismiss the complaint for lack of personal jurisdiction and to amend the findings of fact to reflect that Quality was not liable for the judgment against Kent Trading. The trial court denied both motions.

### ISSUES

1. Did the trial court have personal jurisdiction over appellant Quality Fish?

2. Did the trial court err by refusing to amend the findings of fact, conclusions of law to state that Quality Fish was not liable for any part of the judgment against Kent Trading?

### ANALYSIS

#### I.

■ In order to assert personal jurisdiction over a non-resident defendant, the plaintiff must show that the Long Arm Statute applies and that sufficient minimum contacts between the forum and the defendant are present so as to satisfy minimum due process requirements. *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 294 (Minn.1978).

■ Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of presenting a prima facie case of constitutional minimum contacts between the forum and the defendant. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). At the pretrial stage, the court is to take as true the allegations contained in the plaintiff's complaint and any supporting evidence submitted. *Id.*

Here, Bellboy invokes jurisdiction under the "transacting business" subdivision of the Long Arm Statute. *See* Minn.Stat.

§ 543.19, subd. 1(b) (1990). When interpreting the "transacting business" provision, Minnesota appellate courts have held that "our long-arm statute is intended to assert in personam jurisdiction over nonresidents to the maximum extent consistent with due process." *Marquette,* 270 N.W.2d at 294. Due process requires sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Further, the defendant must have done some act by which it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Dent–Air, Inc. v. Beech Mountain Air Serv.,* 332 N.W.2d 904, 907 (Minn.1983) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Finally, a nonresident must "reasonably anticipate being haled into the state's court." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ In *Hardrives,* 307 Minn. at 294, 240 N.W.2d at 817, the Minnesota Supreme Court adopted the test in *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965), for evaluating whether the fundamental fairness requirements for exercising personal jurisdiction have been met. The factors that the court should consider are:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the connection or relationship between the cause of action and the contacts;

(4) the state's interest in providing a forum; and

(5) the convenience of the parties.

*Id.* The last two factors are secondary considerations. *Dent–Air,* 332 N.W.2d at 907.

■ Appellant argues that the state lacked sufficient contacts to support an exercise of personal jurisdiction. We disagree. The trial court identified the following contacts with Minnesota as supporting its exercise of personal jurisdiction:

> [Quality] solicited business from [Bellboy] in Minnesota,[1] [Quality] released its financial information to [Bellboy] in Minnesota, and [Quality] contracted under the laws of Minnesota.

The trial court correctly recognized that the quantity of contacts between Minnesota and Quality are not great but noted, relying on *Marquette*, that even one isolated contact may be sufficient. *Id.* 270 N.W.2d at 296. Where the quantity of contacts with the forum is not large, the nature and quality of the contacts become dispositive. *Id.*

In *Marquette*, the supreme court noted:

> This court, consistent with the rule of *Hanson v. Denckla,* * * * has considered a defendant's having purposefully solicited contacts with a Minnesota resident or having initiated or induced the transaction out of which the cause of action arises as a crucial factor justifying the assumption of personal jurisdiction.

*Id.* The court determined that the "active inducement of a Minnesota resident to enter a transaction to its detriment" was sufficient to "justify subjecting [the defendant] to the personal jurisdiction of the courts of this state under the 'purposeful availment of privileges' test of *Hanson v. Denckla.*" *Id.* at 297.

■ Here, taking the allegations contained in Bellboy's pleadings as true, we conclude that Quality's conduct satisfied the purposeful availment test. Appellant's agent, Kent Trading, negotiated a contract between Bellboy and Quality in which Bellboy agreed to deliver fish to Quality. Before Bellboy agreed to ship the fish on credit, it requested credit references from Quality. Quality's president directed its bank to release credit information to Bellboy. Based on the information, Bellboy extended credit and shipped the fish to the address provided by Quality. Indeed, the straight bill of lading shows that the goods were shipped to "Quality Fish c/o No American Shellfish." Although Bellboy sent a confirmation of the order to Quality at its home office in Port Washington, New York, Quality never notified Bellboy that the order was erroneously placed or was not the responsibility of Quality. Only after the fish were delivered to the warehouse in New York and Bellboy sought payment from Quality, did Quality object and deny responsibility for the order. This apparent fraudulent inducement of the transaction, under the rule in *Marquette*, is sufficient to support the trial court's finding of personal jurisdiction.

■ Similarly, in *Vikse v. Flaby*, 316 N.W.2d 276, 282–83 (Minn.1982), and *Kopperud v. Agers*, 312 N.W.2d 443, 445–46 (Minn.1981), the Minnesota Supreme Court found sufficient forum contacts where the defendants participated in a scheme to defraud Minnesota investors. The analysis in *Kopperud* is particularly apt in this case:

> This is not a case of an isolated or unforeseeable contact with Minnesota. [Defendant] purposefully availed himself of this state to carry out a scheme to defraud investors. Although his direct contacts with this state were limited, he was instrumental in setting in motion the fraudulent scheme and in keeping it going. The cause of action arises directly out of the fraudulent transactions.

*Id.* We, accordingly, hold that where a defendant fraudulently enters a contract with a Minnesota resident, the constitutional minimum contact requirements are met, thus supporting the trial court's exercise of personal jurisdiction.

Undoubtedly, Minnesota has a substantial interest in protecting its citizens from nonresidents that enter contracts fraudulently.

We find *Leoni v. Wells*, 264 N.W.2d 646 (Minn.1978), *Marshall Egg Transp. Co. v. Bender–Goodman Co.*, 275 Minn. 534, 148 N.W.2d 161 (1967) and *S.B. Schmidt Paper*

---

1. The trial court applied an agency analysis in determining that Quality, by authorizing Kent Trading to contract for the fish, was potentially liable as the principal in the transaction.

*Co. v. A to Z Paper Co.*, 452 N.W.2d 485 (Minn.App.1990), distinguishable. Unlike the facts of the case here, *Schmidt, Leoni* and *Marshall* did not involve any allegations of fraud. It is the aggressive and arguably fraudulent conduct on the part of Quality that satisfies the purposeful availment test.

## II.

■ Next, Quality contends that the court erred by refusing to amend the findings of fact to state that Quality was not liable for the judgment against Kent Trading. Again, we disagree. An order denying a motion to amend findings of fact is not appealable. *Tompkins v. Sandeen*, 243 Minn. 256, 258, 67 N.W.2d 405, 407 (1954).

## DECISION

The trial court properly found that it had personal jurisdiction over appellant and the trial court's denial of appellant's motion is not properly before this court.

Affirmed and remanded.

HUSPENI, Judge (dissenting).

I respectfully dissent because I believe the contacts between Minnesota and Quality Fish are insufficient to support the exercise of personal jurisdiction.

The majority carves out an exception to the minimum contact requirements for cases involving fraud. This exception overlooks longstanding precedent that requires substantial contacts between the *forum* and the *nonresident,* rather than between the parties in the lawsuit. In a contract action, "the contract must have a substantial connection with the state." *Dent–Air Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn.1983) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

I can find no material distinction between this case and *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485 (Minn.App. 1990). In *Schmidt,* this court held that the mere fact that a Minnesota resident and an out-of-state buyer entered a contract did not confer jurisdiction. *Id.* at 488–89. There, the defendant placed four separate orders over the phone after making telephone inquiries regarding the products and receiving a form from Minnesota, and made payments to the Minnesota seller. Quoting the analysis of the court in *Mountaire Feeds, Inc. v. Argo Impex, S.A.*, 677 F.2d 651, 655 (8th Cir.1982) (citations omitted), this court stated:

> We conclude that [plaintiff's] unilateral performance in the forum state is insufficient to support the exercise of personal jurisdiction over [defendant]. The sales contracts between [plaintiff] and [defendant] do not constitute a basis for jurisdiction. "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." The commercial contacts in the present case tie [defendant] to [plaintiff], but not to [the forum state]. "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident."

*Schmidt,* 452 N.W.2d at 489.

Similarly, in *Leoni v. Wells*, 264 N.W.2d 646, 647 (Minn.1978), the supreme court held that "an isolated purchase of goods from a Minnesota seller will not by itself subject the buyer to the jurisdiction of the Minnesota courts." The court found telephone calls and letters insufficient contacts to exercise jurisdiction where the defendant had not entered the state. *Id.*

The supreme court reached a similar result in *Marshall Egg Transport Co. v. Bender–Goodman Co.*, 275 Minn. 534, 537–38, 148 N.W.2d 161, 163–64 (1967) where it found telephone conversations and mail correspondence to be insufficient contacts. The court reasoned that the defendant was not the aggressor and had not availed itself of the right of doing business in Minnesota. *Id.* at 537, 148 N.W.2d at 164.

This case only involves a single sales transaction between a Minnesota seller and a New York buyer brokered by a Florida business. Quality does not conduct any

independent business activities in Minnesota; it does not sell its product here, does not maintain an office here, and has no employees or agents in the state. Any alleged fraudulent activity did not create an additional connection between Minnesota and Quality Fish.

Unlike the liquor vendor in *BLC Ins. Co. v. Westin Inc.*, 359 N.W.2d 752, 754 (Minn. App.1985), *pet. for rev. denied* (Minn. Apr. 15, 1985), *cert. denied*, 474 U.S. 844, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985), Quality did not engage in any behavior such as conducting an advertising campaign on a Minnesota radio station to solicit business. Similarly, Quality did not aggressively seek out Minnesota residents to engage in a complex ongoing financial arrangement such as was the case in *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 293–94 (Minn.1978), *Vikse v. Flaby*, 316 N.W.2d 276, 282–83 (Minn.1982), and *Kopperud v. Agers*, 312 N.W.2d 443, 445 (Minn.1981). Rather, Quality merely placed an order for fish for which it ultimately refused to make payment.

Focusing on the connection between the State of Minnesota and Quality rather than between Bellboy and Quality, this court should conclude, following the holdings of *Leoni, Marshall Egg* and *Schmidt* that the court lacked personal jurisdiction over Quality.

I, accordingly, would dismiss the complaint.