BELLBOY SEAFOOD CORPORATION,
Respondent,

v.

KENT TRADING CORP. d/b/a
Al Kent Sales, Defendant,

Quality Fish, petitioner, Appellant.

No. C5-91-300.

Supreme Court of Minnesota.

May 22, 1992.

Carolyn J. Trevis, Minneapolis, for appellant.

Steven M. Bell, Eden Prairie, for respondent.

## OPINION

WAHL, Justice.

We granted the petition of Quality Fish, a New York corporation, to review a split decision of the court of appeals, the majority of the panel having affirmed the trial court's denial of Quality's motion to dismiss for lack of personal jurisdictions. *Bellboy Seafood Corp. v. Kent Trading Corp.*, 473 N.W.2d 384 (Minn.Ct.App.1991). We reverse.

The only issue before this court is whether the contacts between Quality Fish and the State of Minnesota are sufficient to support the exercise of personal jurisdiction over this nonresident defendant. We conclude that they are not. The record demonstrates here but a single sales transaction between a Minnesota seller, Bellboy Seafood Corporation, and the New York purchaser, Quality—a transaction negotiated in the first instance by a Florida broker, Kent Trading Corporation. Quality conducts no business activities in this state; it does no advertising or distribution of its product here; it maintains no office and has neither employees nor agents in this state.

The trial court and majority of the court of appeals' panel, while recognizing that the quantity of contacts between this state and Quality were not considerable, nevertheless concluded that an "apparent fraudulent inducement of the transaction," *id.* at 387, is sufficient to support an exercise of personal jurisdiction. *Citing Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290 (Minn.1978).

It is our view that, even assuming the allegation of fraud contained in Bellboy's complaint, the *Marquette* analysis is both factually and qualitatively distinguishable from the event which gave rise to this action. Instead, in application of the test enunciated in *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir.1965), as adopted

by this court in *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 240 N.W.2d 814 (1976), the trial court lacked personal jurisdiction over this nonresident defendant. *See also Leoni v. Wells*, 264 N.W.2d 646 (Minn.1978); *Marshall Egg Transport Co. v. Bender–Goodman Co.*, 275 Minn. 534, 148 N.W.2d 161 (1967).

Reversed.

YETKA, Justice (dissenting).

I respectfully dissent. The majority opinion mistakenly asserts that it would be unfair to sue appellant, Quality Fish, in Minnesota because it maintains no *physical* presence here. This assertion is conspicuously contrary to our own and the United States Supreme Court's in personam jurisdiction precedents. Moreover, the majority offhandedly dismisses the lower courts' decisions without any discussion of or regard for the test the majority allegedly applied to conclude that the trial court lacked personal jurisdiction over the nonresident appellant in this case. In my opinion, application of our precedents to the facts of this case compels the conclusion that the trial court has personal jurisdiction over the nonresident appellant, Quality Fish.

The trial court specifically found the following facts for purposes of determining whether Bellboy had made a prima facie showing of Quality Fish's Minnesota-related activities through the complaint and supporting affidavits:

1. Kent Trading Corp. is a broker of food products located in Florida.

2. Quality Fish is a wholesaler/distributor of fish products located in New York.

3. Kent Trading was acting as a broker/agent on behalf of and at the direction of Quality Fish.

4. Quality Fish, through Kent Trading, initiated the transaction and solicited goods from Bellboy.

5. Written confirmation of the order was sent directly to Quality Fish stating the contract terms.

6. Quality Fish never objected to the contract.

7. The contract provided that Minnesota law would govern the transaction.

8. Quality Fish authorized release of its bank references to Bellboy.

9. At the direction of Kent Trading, the goods were shipped to North American Shellfish, an affiliate of Quality Fish.

For purposes of a pretrial motion to dismiss for lack of personal jurisdiction, the factual allegations in the complaint and supporting affidavits are taken as true. *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 292 (Minn.1978). The plaintiff must make a prima facie showing that the defendant has sufficient contacts within the state so that requiring the defendant to litigate in the state does not violate traditional notions of fair play and substantial justice. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 906–07 (Minn.1983) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In my view, the plaintiff has satisfied its burden in this case.

In order for a Minnesota court to exercise personal jurisdiction over a nonresident defendant, both statutory and constitutional requirements must be met. The requirements of Minn.Stat. § 543.19, subd. 1(b) (1990), Minnesota's "long-arm" statute, are met when a nonresident party "transacting business" within the state has sufficient contacts to justify its being haled into a foreign court without offending due process of law. In other words, the statute reaches only as far as constitutional limitations permit. *Kopperud v. Agers*, 312 N.W.2d 443, 445 (Minn.1981). In addition, "doubts should be resolved in favor of retention of jurisdiction." *Hardrives, Inc. v. City of LaCrosse, Wisconsin*, 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976). Here, Quality Fish's business contact in Minnesota satisfies the requirements of Minnesota's "long-arm" statute because it is constitutionally permissible to require Quality Fish to defend itself in Minnesota.

For a court's exercise of personal jurisdiction to be constitutional, it is "essential in each case that there be some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In contract cases, this means that the contract has a substantial connection with the state and that the nonresident must reasonably be able to anticipate being haled into the state's court. *Dent–Air, Inc.*, 332 N.W.2d at 907.

Finally, this court has adopted and reaffirmed in numerous cases a five-factor test for analyzing whether an exercise of personal jurisdiction is constitutional. That test requires consideration of (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties. *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665, 668 n. 1 (Minn.1988). The first three factors are the primary factors with the last two deserving lesser consideration. *Dent–Air*, 332 N.W.2d at 907.

The court of appeals held that a trial court may constitutionally exercise personal jurisdiction over a nonresident defendant who fraudulently enters a contract with a Minnesota resident. The appeals court held that the "fraudulent inducement of the transaction" was dispositive in determining the sufficiency of Quality Fish's contacts in the state. I agree with the majority that the appeals court need not have announced a rule encompassing a "fraudulent inducement" theory. An inquiry into the merits of the allegations should not determine the jurisdictional question presented in this case. However, I cannot agree with the majority's outright reversal of the decisions below because I believe a finding of in personam jurisdiction is required under the minimum contacts/purposeful availment test, as the trial court held.

The *quantity* of Quality Fish's contacts in Minnesota is not great. Nevertheless, both this court and the United States Supreme Court have held that "even one single, isolated transaction between a nonresident defendant and a resident plaintiff can be a sufficient contact to justify exercising personal jurisdiction under due process standards." *Marquette Nat'l Bank*, 270 N.W.2d at 295 (citing cases where jurisdiction grounded in a single transaction). Accordingly, "[w]here jurisdiction is thus based on a single transaction contact, the *nature and quality of the contact* becomes dispositive." *Id.* (emphasis in original).

In *Marquette*, we held that a crucial factor justifying the exercise of personal jurisdiction over a nonresident is whether that defendant has "purposefully solicited contacts with a Minnesota resident or [has] initiated or induced the transaction out of which the cause of action arises * * *." 270 N.W.2d at 296. If the defendant has actively induced a Minnesota resident to enter a transaction to its detriment, the court may exercise personal jurisdiction over the defendant under the "purposeful availment of privileges" test in *Hanson v. Denckla. Id.* at 297. Of course, the third primary factor, the source and connection of the contact to the cause of action, must also weigh in favor of jurisdiction.

Here, taking the allegations contained in Bellboy's pleadings as true, as we must at the pretrial stage, I am constrained to conclude that Quality Fish not only solicited contact with Bellboy through its agent, Kent Trading, but also that it actively induced Bellboy to enter into a transaction to its detriment. In my view, this active solicitation is dispositive of the question presented in this case. The court of appeals' analysis is compelling:

> Appellant's agent, Kent Trading, negotiated a contract between Bellboy and Quality in which Bellboy agreed to deliver fish to Quality. Before Bellboy agreed to ship the fish on credit, it requested credit references from Quality. Quality's president directed its bank to release credit information to Bellboy. Based on the information, Bellboy extended credit and shipped the fish to the address provided by Quality. * * * Although Bellboy sent a confirmation of

the order to Quality at its home office in Port Washington, New York, Quality never notified Bellboy that the order was erroneously placed or was not the responsibility of Quality. Only after the fish were delivered to the warehouse in New York and Bellboy sought payment from Quality, did Quality object and deny responsibility for the order.

*Bellboy Seafood Corp. v. Kent Trading Corp.*, 473 N.W.2d 384, 387 (Minn.App. 1991). This contact, which is the source of the cause of action here, meets the "purposeful availment" test without resorting to substantive allegations of fraud or breach of contract.

Moreover, in determining whether the due process clause is offended by dragging a defendant into a foreign forum, we have required that potential defendants be allowed to " 'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Real Properties*, 427 N.W.2d at 667–68 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)). Under this approach, which also incorporates the five factors noted above, the test is whether the defendant had "fair warning" that it might be sued in the forum state: "[T]he defendant is deemed to have 'fair warning' if it has 'purposefully directed' its activities at residents of the forum, and if the plaintiff's alleged injuries 'arise out of or relate to' those activities." *Real Properties, Inc.*, 427 N.W.2d at 668 (citations omitted). Finally, a contact is not sufficient if it is "fortuitous," "random," or "attenuated." *Id.*

In this case, the defendant had fair warning that it might be sued in this state. Through its agent, Quality Fish "purposefully directed" its activities at a Minnesota resident. Under no circumstances can Quality Fish's contact with Bellboy be considered "fortuitous," "random," or "attenuated." Quality Fish initiated the contact, provided credit references, and did not object to a confirmation of the order Bellboy sent. Quality Fish could not have acted more "purposefully." Finally, it is undisputed that Bellboy's cause of action arises out of and relates to Quality's activities.

Accordingly, I would affirm the decisions of the courts below. In my opinion, reversal is not appropriate here because a straightforward minimum contacts/purposeful availment test supports the conclusion that Minnesota courts may exercise personal jurisdiction over the nonresident defendant in this case.