**MARQUETTE NATIONAL BANK OF MINNEAPOLIS, Respondent,**

v.

**Donald M. NORRIS, et al., Defendants,**

**Patrick O'Malley and Robert S. Kosin, as Voting Trustees under a Voting Trust Agreement dated March 18, 1976, et al., Appellants.**

No. 48523.

Supreme Court of Minnesota.

Sept. 15, 1978.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty, William Z. Pentelovitch, Minneapolis, for appellants.

Levitt, Palmer, Bowen, Bearmon & Rotman, J. Patrick McDavitt, Minneapolis, for respondent.

Heard before SHERAN, C. J., and ROGOSHESKE and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The issue raised on this appeal is whether appellants, who are residents of Illinois, have sufficient contacts with Minnesota to subject them to personal jurisdiction in the district court of this state in an action by plaintiff, Marquette National Bank of Minneapolis (Marquette), seeking in part to recover personal judgments upon pledged promissory notes of appellants. We hold under the facts of the case that the contacts are sufficient to satisfy both Minn.St. 543.-19, our long-arm statute, and constitutional requirements and affirm the district court's determination and its refusal to dismiss any portion of the action for lack of personal jurisdiction.

For purposes of a Rule 12.02, Rules of Civil Procedure, pretrial motion to dismiss for lack of personal jurisdiction, the factual allegations in the complaint and supporting affidavits are to be taken as true. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 240 N.W.2d 814 (1976). Following is a summary of the facts upon which the trial court based its determination.

Appellants, referred to as the Illinois shareholders, are the beneficial owners of all preferred stock and about 60 percent of the common stock of Opar Corporation (Opar), a Delaware corporation whose principal business is to act as a holding company for the controlling interest in the First Bank of Oak Park, an Illinois state bank located in the Chicago suburb of Oak Park. The shares of stock of Opar are registered in the names of two of the appellants, Patrick O'Malley and Robert S. Kosin, trustees under a voting trust agreement.

On April 28, 1976, appellants purchased the controlling interest in Opar from seven shareholders, two of whom were Donald M. Norris and Barbara Whelan. Since 1973, Norris and Whelan, the primary debtors and nonappealing defaulting defendants in Marquette's action, were each indebted to Marquette for $55,000 pursuant to separate promissory notes, each renewed from time to time and each collateralized by separate 500-share certificates of Opar's preferred stock owned respectively by Norris and Whelan. In order to accomplish the purchase of all preferred shares in Opar, it was necessary for appellants to obtain a release of the Norris and Whelan stock pledged to and possessed by Marquette. This was accomplished by negotiations initiated by the Illinois trustees and shareholders and carried on by telephone and letters whereby the parties reached agreements resulting in the following transactions:

(a) Marquette's renewal of the loans to Norris and Whelan by their execution of separate new promissory notes on April 23 and 24, 1976. Each note provided for installment payments over a 5-year period with an initial scheduled repayment of $2,443.34 on December 31, 1976.

(b) Marquette's surrender of possession of both Norris' and Whelan's certificates of 500 shares of preferred stock to the Illinois trustees and shareholders.

(c) Transfer of ownership by Norris and Whelan of their stock to the Illinois shareholders in consideration for which the Illinois shareholders executed two nonnegotiable promissory notes to Norris and Whelan, each in the amount of $87,890. Among other provisions, each promissory note provided that the Illinois shareholders reserved the privilege—

"* * * of making payments to and in full or partial discharge of the payee's obligations, if any, to Opar Corporation and/or First Bank of Oak Park and/or Marquette National Bank of Minneapolis, Minnesota."

The payment schedule on these notes matched that on the Norris and Whelan renewal notes to Marquette. Each note was secured by a security agreement that included a pledge by and delivery to Norris and Whelan of two new certificates, each representing 500 shares of preferred stock registered in the name of the Illinois trustees.

(d) As required by Marquette, Norris and Whelan, as security for their renewal notes, each assigned to Marquette the $87,890 notes of the Illinois shareholders and pledged and delivered to Marquette the 500-share stock certificates received by them from and pledged by the Illinois trustees as security for the payment of the $87,890 notes.

The pledge of the notes and stock was accomplished by a package mailing of these documents by appellant trustees, including Norris' and Whelan's renewed promissory notes and copies of other documents evidencing the transaction which resulted in the purchase of controlling interest in and the management of Opar. Also included was what the parties refer to as a "letter agreement," signed by the Illinois trustees and approved by Marquette. In essence, this letter expressed the parties' understanding and agreement that Marquette would not declare a default upon the Norris or Whelan notes nor of the pledged collateral so long as the Illinois shareholders continued to make payments directly to Marquette under the terms of their $87,890 notes to Norris and Whelan in pro tanto discharge of the obligations of Norris and Whelan, as expressly authorized by those notes, quoted above.

■ Following this transaction between the Illinois trustees and shareholders and Marquette, all of which was accomplished without any physical presence of appellants in Minnesota, difficulties arose when the Illinois shareholders defaulted in payment of their notes to Norris and Whelan and Norris and Whelan defaulted in payment of the first installment of their renewal notes.[1]

1. Appellant Illinois shareholders refused to make payments on their $87,890 promissory notes to Norris and Whelan because they allege breaches of a "Warranty Certificate" as to the

Marquette, with notice to the Illinois shareholders and trustees, declared the notes in default and demanded full payment. No payment being received, Marquette commenced this action seeking personal judgment upon the notes of Norris and Whelan (complaint counts I and II), foreclosure of the two pledged stock certificates in Marquette's possession representing 1,000 preferred shares in Opar (count III), and personal judgment upon the pledged notes of the Illinois shareholders (counts IV and V). Counts I, II, and III of the complaint are not at issue in this appeal from the trial court's order denying appellant Illinois shareholders' pretrial motion to dismiss the action against them for lack of personal jurisdiction under Rule 12.02(2), Rules of Civil Procedure.[2]

■ The exercise of in personam jurisdiction over appellants on counts IV and V of the complaint is proper only if it complies with both the statutory standards of our long-arm statute, Minn.St. 543.19, and the minimum standards of due process. *Northern States Pump & Supply Co. v. Baumann,* Minn., 249 N.W.2d 182, 184 (1976).

1. Section 543.19, subd. 1, provides in part:

"As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

"(a) Owns, uses, or possesses any real or personal property situated in this state, or

"(b) Transacts any business within the state, * * * *"

■ We hold that the trial court was correct in finding the minimal requisites of § 543.19, subd. 1(b), satisfied, provided appellants' contacts with the state are sufficient to justify exercising personal jurisdiction without offending due process of law.

■ In interpreting the meaning of "transacting business" under § 543.19, this court has consistently held that our long-arm statute is intended to assert in personam jurisdiction over nonresidents to the maximum extent consistent with due process, and any contacts by nonresidents with this state that are extensive enough to satisfy due process requirements for exercise of personal jurisdiction are also sufficient to authorize the exercise of personal jurisdiction under the statute. *Northern States Pump & Supply Co. v. Baumann,* Minn., 249 N.W.2d 182 (1976); *Ellwein v. Sun-Rise, Inc.,* 295 Minn. 109, 203 N.W.2d 403 (1972); *Mid-Continent Frgt. Lines v. Highway Trailer Indus.,* 291 Minn. 251, 190 N.W.2d 670 (1971); *Hunt v. Nevada State Bank,* 285 Minn. 77, 172 N.W.2d 292 (1969), certiorari denied sub nom. *Burke v. Hunt,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). Where § 543.19, subd. 1(b), is concerned, the statutory and constitutional requirements for exercise of personal jurisdiction are coextensive. The controlling issue is thus whether upon the particular facts of this case the nonresident appellants' contacts with this state are sufficient to justify assumption of personal jurisdiction over them in the courts of this state under the

financial status of Opar, signed and delivered by all of the seven former shareholders, including Norris and Whelan, as part of the consideration for the purchase of their Opar stock by the present Illinois shareholders on April 28, 1976. Specifically, the claimed breaches relate to alleged undisclosed embezzlement by one of the former shareholders.

**2.** The trial court also stated in its order that it had in rem jurisdiction over the pledged stock certificates with regard to count III of the com-

plaint, which statement is now disputed by appellants. The motion before the trial court challenged only the court's personal jurisdiction over appellants, and the court's finding of in rem jurisdiction was therefore unnecessary and is not properly before this court for review at this time. Appellants are of course not precluded from hereafter presenting to the trial court any challenge they have to its assumption of in rem jurisdiction. See, Rule 12.08(3), Rules of Civil Procedure.

constitutional standards of due process of law articulated and applied by the United States Supreme Court.

2. The applicable constitutional standard governing exercise of personal jurisdiction over nonresident defendants derives from *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945):

" * * * [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

■ In applying the fundamental fairness standard of *International Shoe,* this court adopted the test announced in *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8 Cir. 1965), looking to five factors to evaluate the fairness of exercising personal jurisdiction over nonresident defendants. As stated in *Hardrives, Inc. v. City of La-Crosse,* 307 Minn. 290, 294, 240 N.W.2d 814, 817 (1976), the primary factors to consider are (1) the quantity of contacts, (2) the nature and quality of the contacts, and (3) the connection or relationship between the cause of action and the contacts. Two secondary factors are the state's interest in providing a forum and the convenience of the parties. See, also, *Mid-Continent Frgt. Lines v. Highway Trailer Indus.,* 291 Minn. 251, 255, 190 N.W.2d 670, 673 (1971).

### Secondary Factors

■ The factors of *forum interest* and *litigational convenience* considered together cannot be decisive upon this record. While appellants argue that it will cause them inconvenience to present their alleged warranty defenses to payment on their notes in Minnesota, the convenience issue is rarely dispositive (see, e. g., *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 299, 240 N.W.2d 819), and "Minnesota obviously has an interest in providing a forum for [its] resident allegedly wronged." *Northern States Pump & Supply Co. v. Baumann,* Minn., 249 N.W.2d 182, 186.

### Primary Factors

The *quantity of contacts* here was not great. Appellants' contacts with this state are limited to their participation in a single, isolated loan renewal transaction in April 1976 where appellants' collateral was substituted for collateral formerly provided by Norris and Whelan. Without artificially counting the number of telephone or mail exchanges required to complete the transaction, we observe that where *the cause of action arises directly out of defendants' contacts with the state,* as here, the United States Supreme Court has recognized that even one single, isolated transaction between a nonresident defendant and a resident plaintiff can be a sufficient contact to justify exercising personal jurisdiction under due process standards. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee* the single transaction was an insurance contract which the nonresident insurer delivered in California and on which the plaintiff insured, a resident of California, mailed premiums from there. This was sufficient to justify the exercise of personal jurisdiction. See, also, *Northwestern National Bank of St. Paul v. Kratt,* 303 Minn. 256, 226 N.W.2d 910 (1975); *Paulos v. Best Securities Incorporated,* 260 Minn. 283, 109 N.W.2d 576 (1961); *Dahlberg Co. v. Western Hearing Aid Center,* 259 Minn. 330, 107 N.W.2d 381, certiorari denied, 366 U.S. 961, 81 S.Ct. 1921, 66 L.Ed.2d 1253 (1961).

■ Where jurisdiction is thus based on a single transaction contact, the *nature and quality of the contact* becomes dispositive.

■ The fact that the nonresident appellants were never physically present in the state in the course of their transaction, which was accomplished entirely by telephone and mail, is clearly of no significant consequence. See, e. g., *Paulos v. Best Securities Incorporated, supra; Ellwein v. Sun-Rise, Inc.,* 295 Minn. 109, 203 N.W.2d 403 (1972).

The United States Supreme Court, however, has imposed a limitation upon the

nature of single or isolated transactions which can justify exercise of jurisdiction over the defendant. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the court found that the Delaware trustee of a Delaware trust could not be subjected to personal jurisdiction in Florida courts on the sole basis of its having remitted trust income to the settlor who had changed her domicile to Florida. The court said (357 U.S. 253, 78 S.Ct. 1239, 2 L.Ed.2d 1298):

" * * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state,* thus invoking the benefits and protection if its laws. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95." (Italics supplied.)

This court, consistent with the rule of *Hanson v. Denckla, supra,* has considered a defendant's having purposefully solicited contacts with a Minnesota resident or having initiated or induced the transaction out of which the cause of action arises as a crucial factor justifying the assumption of personal jurisdiction. In *Paulos v. Best Securities Incorporated, supra,* we found personal jurisdiction over a nonresident seller of securities, who never entered the state and had no agents nor any continuous business in the state, on the basis of a single series of telephone and mail contacts with a Minnesota resident whereby the defendant solicited and promoted a sale of securities. Upon facts analogous to the present case, in *Northwestern National Bank of St. Paul v. Kratt,* 303 Minn. 256, 226 N.W.2d 910 (1975), we approved as consistent with due process an assumption of personal jurisdiction over a nonresident on the basis of a single transaction whereby the defendant signed a guaranty in Illinois of a loan made in Minnesota to a Minnesota resident. There, as in the present case, the cause of action against the defendant arose directly out of the defendant's participation in a single transaction that was his only contact with Minnesota. Appellants attempt to distinguish Kratt by arguing that Kratt was liable as a guarantor while appellants personally are not guarantors of the Norris and Whelan loans. Whether appellants are personally liable, however, is a question on the merits, yet to be decided. The crucial similarity between the two transactions is the economic effect that appellants' purposeful acts created within Minnesota in both cases. In *Kratt,* the defendants' guaranty served as an inducement to make a loan within Minnesota. Here, it was appellants' agreement pledging the additional security of their $87,890 notes that induced Marquette to renew the Norris and Whelan loans.

Upon this record, the factual allegations do not support appellants' argument that they became involuntarily entangled in the Norris and Whelan transaction giving rise to Marquette's action against them. It was appellant Illinois stockholders who purposefully initiated the transaction whereby they offered and agreed, upon Marquette's renewal of the Norris and Whelan notes, to substitute their preferred shares and their notes for the collateral previously provided to Marquette by Norris and Whelan. Conversely, appellants knew that if Marquette would not accept or rely upon their offer and agreement the collateral pledged by Norris and Whelan would not be surrendered or released. By structuring a transaction in which payment schedules on appellants' notes that they pledged to Marquette were identical to those on the Norris and Whelan notes to Marquette, and by providing authority in the notes and by letter agreement for direct payment to Marquette, the Illinois stockholders intended to, and did, assume an expectant responsibility for paying Marquette directly in pro tanto discharge of the Norris and Whelan obligations. In reasonable reliance thereon, Marquette was induced to enter the transaction proposed by appellants, extending further credit to Norris and Whelan in Min-

nesota and thereby enabling appellants to complete their objective of the purchase of all of Opar's preferred shares.

■ Appellants rely upon *All Lease Co. Inc. v. Betts,* 294 Minn. 473, 199 N.W.2d 821 (1972), and *Fourth N. W. Nat. Bank v. Hilson Industries, Inc.,* 264 Minn. 110, 117 N.W.2d 732 (1962), to argue that the quality of appellants' contacts with the state should be found insufficient to confer personal jurisdiction. These cases are different on their facts and did not involve the element of active inducement of a Minnesota resident to enter a transaction to its detriment, which is present here. It would serve little purpose to discuss further authorities cited by the parties that are only partially similar to the unique factual situation presented. In determining the constitutionality of exercising personal jurisdiction, the sufficiency of contacts must be evaluated in each case on its own facts.

■ Upon the factual allegations presented here, it appears to us that appellants' contacts with this state were of such nature and quality in inducing a financial transaction within this state to appellants' planned benefit as to justify subjecting them to the personal jurisdiction of the courts of this state under the "purposeful availment of privileges" test of *Hanson v. Denckla, supra,* and within the authority of our holding in *Northwestern National Bank of St. Paul v. Kratt, supra.* Accordingly, we hold that appellants were properly made subject to personal jurisdiction in the courts of this state under our long-arm statute without offending recognized constitutional standards of due process of law.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.