**TRIDENT ENTERPRISES INTERNATIONAL, INC., Respondent,**

v.

**KEMP & GEORGE, INC., Defendant, Raymond Burke, Appellant.**

No. C0–92–2434.

Court of Appeals of Minnesota.

July 6, 1993.

Edward J. Pluimer, Dorsey & Whitney, Minneapolis, for respondent.

Darrell A. Jensen, Barna, Guzy & Steffen, Ltd., Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and PETERSON and HOLTAN *, JJ.

## OPINION

PETERSON, Judge.

On appeal from the denial of his motion to dismiss for lack of personal jurisdiction, Raymond Burke argues the trial court erred in finding he had sufficient minimum contacts with Minnesota to permit the exercise of personal jurisdiction over him. We affirm.

## FACTS

Appellant Raymond Burke is the president of Kemp & George, Inc. (K & G). K & G is a corporation based in Boston that sells decorative home furnishings by mail. Respondent Trident Enterprises International, Inc. (TEI) is a corporation based in Minnesota that is in the import/export business.

In November 1991, a K & G merchandiser made a telephone call to TEI in Minneapolis seeking TEI's assistance in expediting shipment of an order from Frank S.V. International. Burke claims he discussed the request two or three more times over the telephone with TEI salespeople.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

TEI claims K & G owed it money for purchases K & G made before November 1991. Consequently, when K & G sought additional service from TEI the controller of TEI, Allan Matthys, called K & G to seek assurances TEI would receive payment for the additional service. Matthys said he spoke to Burke who said K & G was close to improving its financial situation, had made money in October 1991, and would pay TEI one-half of the amount due for the November sale within 30 days of the invoice date and the remainder within 60 days of the invoice date. At Matthys' request, Burke sent a fax to TEI confirming the order and the payment terms.

TEI then contacted Frank S.V. International, obtained the goods K & G requested, and expedited their shipment to K & G. TEI billed K & G on December 1, 1991. On December 2, 1991, TEI received a letter from Exeter Management Company on K & G's behalf. The letter was sent to K & G's vendors and said that all of K & G's assets were secured by perfected liens, that this secured debt exceeded the value of K & G's assets, and that K & G could not pay its creditors.

In a separate transaction, K & G used the services of a Minnesota printing company. Burke contacted the Minnesota printer to make payment arrangements. All contact with the printing company was by telephone or mail and through a Boston salesperson.

Other than these telephone, facsimile, and mail contacts, Burke has had no other contacts with Minnesota. Burke lives in New York, has never visited Minnesota and does not own any property in Minnesota.

TEI sued K & G to recover the amount owed for the goods obtained from Frank S.V. International and sued K & G and Burke for misrepresentation. Burke filed a motion to dismiss for lack of personal jurisdiction. The trial court denied Burke's motion on grounds that Burke's contacts with Minnesota were sufficient to permit the exercise of personal jurisdiction over him.

## ISSUE

Did the trial court err in denying Burke's motion to dismiss for lack of personal jurisdiction?

## ANALYSIS

An order denying a pretrial motion for dismissal for lack of personal jurisdiction is appealable as a matter of right. *In re State & Regents Bldg. Asbestos Cases*, 435 N.W.2d 521, 522 (Minn.1989).

When a defendant challenges the exercise of personal jurisdiction over him, the plaintiff has the burden of proving a prima facie case supporting jurisdiction. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). While a defendant may dispute contacts alleged by the plaintiff, the plaintiff's allegations and supporting evidence must be taken as true at the pretrial stage. *Dent-Air, Inc. v. Beech Mountain Air Serv.*, 332 N.W.2d 904, 907 n. 1 (Minn.1983).

The plaintiff also has the burden of proving that the exercise of jurisdiction over the defendant satisfies both the state long-arm statute and the due process requirements of the Constitution. *Sherburne County Social Servs. v. Kennedy*, 426 N.W.2d 866, 867 (Minn.1988). The long-arm statute provides, in part, that a Minnesota court may exercise personal jurisdiction over a nonresident defendant if that defendant commits an act outside of Minnesota causing injury in Minnesota unless Minnesota has no interest in providing a forum or the burden on the defendant would violate fairness and substantial justice. Minn.Stat. § 543.19, subd. 1(d) (1990).

The legislature intended the state long-arm statute to have the maximum extra-territorial effect allowed under the due process clause of the federal constitution. *Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn.1985), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Consequently,

any contacts by nonresidents with this state that are extensive enough to satisfy due process requirements for exercise of personal jurisdiction are also sufficient to authorize the exercise of personal jurisdiction under the statute.

*Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 294 (Minn.1978).

■ Due process requires that jurisdiction be exercised only when the defendant has sufficient minimum contacts "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *International Shoe, Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). It is essential that

> there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant reasonably must have been able to anticipate being haled into the state's courts. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ To determine whether sufficient minimum contacts exist, we must evaluate (1) the quantity of contacts with the forum state; (2) the nature and quality of contacts; (3) the source and connection of the cause of action with these contacts; (4) the interest of the state in providing a forum; and (5) the convenience of the parties. *Rostad,* 372 N.W.2d at 719–20. This test is used to determine "whether the defendant has established enough contacts with Minnesota to justify being sued here and whether those contacts were established on purpose in order to conduct business in this state." *Real Properties, Inc. v. Mission Ins. Co.,* 427 N.W.2d 665, 668 (Minn.1988). In close cases, "doubts should be resolved in favor of retention of jurisdiction." *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411–12 (Minn.1992).

■ Burke argues his contacts with Minnesota were not sufficient to permit the exercise of personal jurisdiction over him. The quantity of Burke's contacts with Minnesota was minimal. Burke had less than ten contacts with Minnesota and all were by telephone, mail, or facsimile.

However, when the cause of action arises out of the contacts, a single transaction can be sufficient to establish personal jurisdiction over the defendant. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Marquette,* 270 N.W.2d at 295. The fact that the transaction was accomplished entirely by telephone, mail and facsimile is of no significant consequence when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Marquette,* 270 N.W.2d at 295–96 (quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159).

■ When the quantity of contacts is minimal, as in the present case, the nature and quality of the contacts with a state are dispositive. *Marquette,* 270 N.W.2d at 295. We must examine the nature and quality of Burke's contacts with Minnesota to determine whether he purposefully availed himself of the privilege of conducting activities in this state. *See Dent–Air,* 332 N.W.2d at 907.

■ The present case is similar to *Marquette* where a Minnesota bank renewed loans to two Minnesota citizens based on an Illinois company's guarantee of the loans. *Marquette,* 270 N.W.2d at 296. In *Marquette,* the supreme court compared the facts of the case to the facts in *Northwestern Nat'l Bank v. Kratt,* 303 Minn. 256, 226 N.W.2d 910 (1975) and stated:

> The crucial similarity between the two transactions is the economic effect that appellants' purposeful acts created within Minnesota in both cases. In *Kratt,* the defendants' guaranty served as an inducement to make a loan within Minnesota. Here, it was appellants' agreement pledging the additional security of their $87,890 notes that induced Marquette to renew the Norris and Whelan loans.

*Marquette,* 270 N.W.2d at 296.

As in *Marquette* and *Kratt,* the plaintiff here, TEI, was induced by representations of the nonresident defendant, Burke, to enter into a transaction with a third party, Frank S.V. International, in Minnesota. Burke's purposeful representations induced TEI to contact Frank S.V. International on

behalf of K & G to obtain expedited shipment of goods to K & G. This transaction was completed in Minnesota and created economic effects in Minnesota. Thus, the nature and quality of Burke's contacts with this state are sufficient to support the exercise of personal jurisdiction over him.

We also must examine the relationship between Burke's contacts with Minnesota and the cause of action. *See Dent–Air,* 332 N.W.2d at 908. The cause of action for misrepresentation arose out of Burke's telephone and facsimile contacts with Minnesota. Without these contacts with Minnesota, there would be no cause of action. *See id.* (when contacts unquestionably gave rise to action, they were properly connected to it).

The fourth factor, Minnesota's interest in providing a forum for TEI, alone cannot establish jurisdiction. *Id.* However, when this factor is viewed in light of the nature and quality of Burke's contacts with Minnesota, the source of the cause of action, and the connection of the cause of action with the contacts, Minnesota's interest in providing a forum also supports the exercise of jurisdiction over Burke.

Finally, although it will be inconvenient for Burke to try his case in Minnesota, this factor is not dispositive when the inconvenience is not extensive. *Schuler v. Meschke,* 435 N.W.2d 156, 161 (Minn.App. 1989), *pet. for rev. denied* (Minn. Apr. 19, 1989). TEI's actions against K & G and Burke involve the same facts, witnesses, and documents. The relevant documents and witnesses will be in Minnesota to defend the action against K & G. The inconvenience to Burke of also coming to Minnesota to defend the action against him is not sufficiently extensive to prevent the exercise of personal jurisdiction over him.

## DECISION

Burke has sufficient minimum contacts with Minnesota to support the exercise of personal jurisdiction over him.

**Affirmed.**