**H.A.W., et. al., Respondents,**

v.

**Bertrand MANUEL, Defendant,**

**Jean Claude Manuel, Appellant,**

**Nacel Cultural Exchanges, a foreign corporation, Nacel Cultural Exchanges, Inc., Respondents.**

No. C3–94–1329.

Court of Appeals of Minnesota.

Nov. 15, 1994.

Review Denied Jan. 13, 1995.

---

James C. Wicka, Leanne G. Litfin, Messerli & Kramer, P.A., Minneapolis, for H.A.W.

Robert L. McCollum, Bloomington, for Bertrand Manuel, Jean Claude Manuel.

Gregory M. Weyandt, Rider, Bennett, Egan & Arundel, Minneapolis, for Nacel Cultural Exchanges.

Mark A. Fonken, St. Paul, for Nacel Cultural Exchanges, Inc.

Alain Frecon, Minneapolis, for amicus curiae Honorary Consul of France in Minnesota.

Considered and decided by PARKER, P.J., and KALITOWSKI, and MANSUR *, JJ.

## OPINION

PARKER, Judge.

The parents of H.A.W., respondents, brought suit in a Minnesota district court. Appellant, a citizen of France, moved to dismiss for lack of personal jurisdiction. The district court denied appellant's motion. Appellant argues that the district court erred. We reverse.

## FACTS

Appellant resides near Paris, France, and has never visited the United States. In the summer of 1991, appellant's son participated in a cultural exchange program. Two companies, Nacel Cultural Exchanges (Nacel France), and Nacel Cultural Exchanges, Inc. (Nacel U.S.A.), managed the program which placed the boy in Minnesota for about a month. Before they allowed the boy into the program, Nacel France conducted routine screening interviews. Appellant was interviewed in this process. He also was required to sign release forms, including one verifying that his son had no psychological or emotional problems. In Minnesota, respondents served as the host family for appellant's son.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

In 1993, respondents filed suit against the Nacel companies, appellant's son, and appellant. The suit alleges that, during his stay in Minnesota, appellant's son sexually abused respondents' daughter and physically assaulted their son. Respondents further allege that appellant's son must have been suffering from some preexisting malady that caused his claimed behavior. They reason that appellant knew or should have known of this alleged affliction. Thus, respondents argue, appellant negligently allowed his son to come to Minnesota, where appellant's permission caused injury to respondents' children.

Appellant replied that the Minnesota trial court could not exercise personal jurisdiction over him and force him to defend himself in Minnesota. Accordingly, he moved to dismiss the complaint against him. However, the trial court ruled that Minnesota's long-arm statute, Minn.Stat. § 543.19, subd. 1(d) (1990), allows it to exercise personal jurisdiction over appellant. The court further ruled that such an extension does not violate the constitutional "minimum contacts" test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This appeal followed from the trial court's order.

## ISSUE

Can a Minnesota trial court, in a negligence action, exercise personal jurisdiction over a foreign citizen who consented to his son's (tortfeasor's) presence in the state?

## DISCUSSION

■ Personal jurisdiction refers to a court's power to decide the rights and interests of the parties in a lawsuit. *See Kulko v. California Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). When a party challenges this power, the forum court must apply two tests to determine whether it can exercise personal jurisdiction over that person. *E.g., Stanek v. A.P.I., Inc.*, 474 N.W.2d 829, 832 (Minn.App. 1991), *pet. for rev. denied* (Minn. Oct. 31, 1991), *cert. denied*, ─── U.S. ───, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). State law must provide a statutory basis for jurisdiction, and the extension of jurisdiction must

not offend the Constitution. *Id.* The facts of the case must satisfy both requirements or the case cannot proceed. *Id.* On review, we assume the facts alleged by respondents and determine whether the district court correctly applied the law. *Id.*

### 1. *State Law Requirement*

■ The law of the state where the court sits must provide a statutory basis for jurisdiction. *Id.* Minnesota's statutes include a "long arm" statute which authorizes jurisdiction over any nonresident who "[c]ommits any act outside of Minnesota causing injury or property damage in Minnesota," subject to several exceptions. Minn.Stat. § 543.19, subd. 1(d) (1992). This language essentially grants Minnesota courts the maximum jurisdictional reach allowable under the second, constitutional, test. *See Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn.1992), *pet. for rev. denied* (Minn. Mar. 2, 1993).

In this instance, if we assume the facts alleged by respondents, the long-arm statute applies. According to these facts, appellant committed an act outside of Minnesota; he signed consent forms which allowed his son to visit here. This fulfills the first half of section 543.19, subd. 1(d). In addition, appellant's act allegedly caused injuries to respondents' children in Minnesota; if appellant had not signed the forms, his son could not have abused respondents' children. This appears to satisfy the second half of section 543.19, subd. 1(d). Thus, based on the given facts, respondents' claim passes the first test and we apply the constitutional analysis.

### 2. *Constitutional Constraint*

■ The Due Process Clause of the Fourteenth Amendment limits state courts' power to assert personal jurisdiction over nonresidents. *See, e.g., Asahi Metal Indus. Co. v. California Superior Court*, 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987). The crux of this inquiry lies in whether the nonresident established sufficient "minimum contacts" with the forum state so that forcing the person to litigate there does not offend "traditional notions of fair play and substan-

tial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (citations omitted).

■ The minimum contacts standard requires "purposeful availment" by the nonresident of the benefits and protection of the forum state, which would allow the person reasonably to anticipate being haled into the state's courts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). Purposeful availment contemplates more than a unilateral act by someone related to the nonresident; it requires affirmative acts directed at the forum state by the nonresident. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

■ Appellant's lone contact with Minnesota occurred when he consented to his son's participation in a cultural exchange. Appellant was interviewed about his son and he signed the required forms. Appellant performed these acts in France and he dealt with the French company, Nacel France. Therefore, the question here is whether, by these acts in France, appellant purposefully availed himself of the benefits and protection of Minnesota law and thereby established minimum contacts with this state such that it is fair and reasonable to force him to defend himself here.

We first dispose of the argument that jurisdiction is permissible based on the allegation that appellant knew or should have known that his son was likely to abuse children. According to this argument, because appellant allegedly knew his son had some emotional problem and because appellant allowed his son to come to Minnesota, appellant could have foreseen that his act of consent would cause injury in Minnesota. This argument concludes that, because of the foreseeability of injury, appellant reasonably could have anticipated being haled into a Minnesota court.

■ Standing alone, however, the foreseeability of injury from a particular act does not confer personal jurisdiction in the state where the injury occurred. *See Burger King*, 471 U.S. at 474–75, 105 S.Ct. at 2183; *World–Wide Volkswagen*, 444 U.S. at 296, 100 S.Ct. at 566; *Sherburne County Social Servs. v. Kennedy*, 426 N.W.2d 866, 870 (Minn.1988) (foreseeability not valid basis for personal jurisdiction in Minnesota). Under this rule, respondents cannot prevail merely by alleging that appellant foresaw or could have foreseen the injury to respondents' children.

An example of additional circumstances that might permit jurisdiction over a nonresident in a tort case based on the foreseeability of injury resulting from conduct outside the forum state is found in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, Florida-based authors of an article were sued in California based on the impact of the article on its subject in California, where she lived. *Id.*, 465 U.S. at 789, 104 S.Ct. at 1487. The Supreme Court upheld jurisdiction over the authors because they had *intended* the effects and specifically *aimed* them at California. *Id.* In this case, however, the underlying claim is negligence, and there is no allegation that appellant intended to harm respondents' family, or even that appellant intended to send his son specifically to Minnesota.

Since the alleged foreseeability cannot confer jurisdiction here, we are left to determine whether the nature and quality of appellant's connection to Minnesota somehow should trigger jurisdiction. *See International Shoe*, 326 U.S. at 316–17, 66 S.Ct. at 158–59; *see also Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn.1983) (stating that the quantity of contacts, nature and quality of contacts, and connection of contacts to cause of action are primary factors). The Supreme Court resolved a strikingly similar question in *Kulko*, 436 U.S. at 87–88, 98 S.Ct. at 1694.

As with appellant, Mr. Kulko's contact with the forum state involved consenting to his child's presence there. *Id.* at 94, 98 S.Ct. at 1698. Kulko allowed his daughter to move to California to live with her mother. *Id.* at 87–88, 98 S.Ct. at 1694. His only other contact with California occurred 13 years earlier, when the parents married there during a

three-day stopover. *Id.* After the daughter moved in, the mother sued Kulko in California for child support. *Id.* The United States Supreme Court held Kulko did not purposefully avail himself of the benefits and protection of California law by consenting to his daughter's desire to live with her mother. *Id.* at 94, 98 S.Ct. at 1698. The Court held California could not exercise jurisdiction over him. *Id.* at 101, 98 S.Ct. at 1701.

The facts of the current case indicate a far more attenuated contact than that found in *Kulko.* Unlike Kulko, appellant has never been in this country, let alone the forum state. In addition, appellant consented only to a short visit by his son, not to permanent residence. Thus, the reasoning of *Kulko* applies with even greater force here. Appellant's consent to his son's desire to participate in a cultural exchange does not amount to purposeful availment of the benefits and protection of Minnesota law and does not constitute a sufficient contact to justify jurisdiction in this state.

Several additional elements also operate against personal jurisdiction in this situation. First, the Supreme Court has warned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. This admonition adds to our impression that the concerns of *Kulko* apply with greater force in this situation, where appellant is a citizen of a foreign nation.

The Minnesota Supreme Court suggests that, in addition to the nature and quality of a nonresident's contact with the state, we consider factors including "the state's interest in providing a forum" and "convenience of the parties." *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). We note that respondents already have a forum in Minnesota for their claims against the other defendants, and respondents presumably could obtain a recovery from them. Thus, our holding does not deny respondents their day in court.

The last consideration again favors appellant. Because appellant and his son have lived their entire lives in France, and because appellant's acts occurred entirely in France, we note that any witnesses concerning appellant's conduct or his son's alleged mental or emotional problems also reside in France. Thus, it would cause enormous inconvenience to most of the participants on this issue to litigate respondents' claim against appellant in Minnesota.

**DECISION**

Because appellant has not been shown to have purposefully availed himself of the benefits and protection of Minnesota law when he consented to his son's participation in a foreign exchange, and because appellant has been shown to have no other contacts with Minnesota, appellant does not have sufficient minimum contacts with Minnesota to satisfy due process requirements. Thus, the district court overreached and erred when it ruled it could exercise personal jurisdiction over appellant.

**Reversed.**