V.H., Respondent,

v.

**The ESTATE OF Bernard F. BIRNBAUM, c/o Personal Representative Cleo Aufderhaar, Petitioner, Appellant.**

No. C0–94–1952.

Supreme Court of Minnesota.

Feb. 16, 1996.

Brian N. Johnson, Sheila T. Kerwin, Minneapolis, for appellant.

Michael J. Colgan, James G. Birnbaum, Dawn Marie Piselli, LaCrosse, WI, for respondent.

## OPINION

ANDERSON, Justice.

Bernard F. Birnbaum was a resident of Texas at the time of his death and his estate is being probated in Texas with ancillary proceedings in Wisconsin. Respondent, V.H., a Minnesota resident, commenced an action in district court in Minnesota against the estate of her deceased father, Bernard F. Birnbaum. In her complaint, V.H. alleged that, when she was a minor, her father engaged in unpermitted, harmful and offensive sexual contact with her. The district court dismissed V.H.'s action on the grounds that Minnesota courts lacked personal jurisdiction over her father's estate because the estate's personal representative did not have sufficient contacts with Minnesota to invoke the jurisdiction of its courts. V.H. appealed, arguing that the contacts of her father, not those of the personal representative of his estate, were the proper subject of a jurisdiction analysis, and that jurisdiction over the personal representative of her father's estate is proper under Minnesota's long-arm statute. The Minnesota Court of Appeals reversed the district court, concluding that Minnesota's long-arm statute allows for jurisdiction over a decedent's nonresident personal representative if the nonresident decedent would have been subject to jurisdiction if alive. The court of appeals also concluded that Birnbaum's conduct fell within the ambit of the long-arm statute. We affirm.

In 1994, V.H., a life-long Minnesota resident, filed a complaint in Hennepin County District Court, alleging that her father, Bernard F. Birnbaum, now deceased, engaged in unpermitted, harmful and offensive sexual contact with her on two occasions between 1958 and 1960. This sexual contact occurred in the Birnbaum home in Minneapolis. V.H. alleged that as a result of her father's conduct, she developed feelings of shame, guilt, anger and repression, and that she suffered severe emotional distress and incurred continuing medical expenses. V.H. also alleged that she did not discover the nature of her injuries until 5½ years prior to the filing of the complaint.

Birnbaum was married in Wisconsin on October 14, 1950. He and his wife moved to Minnesota in October of 1951, and they had two children, V.H., born on November 16, 1951, and a son, born on January 2, 1957. Birnbaum was divorced from V.H.'s mother in 1962 by a default judgment of divorce entered in Hennepin County District Court. Birnbaum consented to his wife's proceeding to trial on the divorce as a default matter. Birnbaum's wife was awarded custody of the two minor children. Birnbaum continued to reside in Hennepin County until November of 1962, when he moved to Texas where he resided until his death on February 7, 1993.

After Birnbaum's death, Cleo Aufderhaar, a personal friend of Birnbaum, was appointed the personal representative of his estate in Texas and in an ancillary proceeding in Wisconsin. Birnbaum's estate is valued at approximately $767,000. None of the estate's property has its situs in Minnesota.

V.H.'s complaint was personally served on Aufderhaar in San Antonio, Texas, and filed in Hennepin County District Court. Aufderhaar, in her capacity as personal representative of the estate, moved the district court to dismiss V.H.'s complaint based in part on lack of personal jurisdiction over her as personal representative of the estate. Aufderhaar asserted by affidavit that she has been a resident of Texas for the past 44

years, except for six years when she attended college. She has never lived in or owned property in Minnesota, nor has she conducted any business in Minnesota. She stated that she has been in Minnesota on three occasions: (1) after bringing Birnbaum to Wisconsin to visit his mother, she and Birnbaum drove to Minneapolis for lunch and sightseeing, returning to Wisconsin the same day; (2) on her way to Canada, she once traversed the state, taking only the time necessary to cross the state; and (3) after Birnbaum's death, she spent three or four hours at a farm owned by a relative of Birnbaum's, which farm is located just across the border from Wisconsin. She has never had a Minnesota bank account or telephone listing, nor has she ever been employed in Minnesota.

The district court granted Aufderhaar's motion to dismiss, ruling, among other things, that Aufderhaar did not have the requisite contacts with Minnesota to establish jurisdiction, and that Minnesota's long-arm statute does not apply because Aufderhaar did nothing which would bring her within its coverage. The district court also ruled that the sections of the Minnesota Probate Code governing foreign personal representatives and decedents do not confer jurisdiction in this case. *See* Minn.Stat. §§ 524.4–301 and .4–302 (1994).

V.H. appealed, and the court of appeals reversed the district court's dismissal of her complaint. The court of appeals concluded that Minnesota's long-arm statute does apply to a deceased nonresident's personal representative. The court also concluded that the long-arm statute allows for jurisdiction over a deceased's nonresident personal representative when the deceased nonresident would have been subject to jurisdiction if alive. Accordingly, the court analyzed Birnbaum's contacts with Minnesota, rather than Aufderhaar's, and concluded that Birnbaum had committed an act enumerated in the long-arm statute and that his contacts were sufficient to grant jurisdiction. Finally, the court concluded that the assertion of jurisdiction in this case comports with due process and remanded the matter to the district court for further proceedings.

## I.

This appeal raises three issues. First, does Minnesota's long-arm statute grant jurisdiction over the foreign personal representative of the estate of a nonresident decedent who is alleged to have committed tortious acts in Minnesota? Second, if the long-arm statute grants jurisdiction, whose contacts with Minnesota are the proper subject for analysis, those of the foreign personal representative or those of the decedent? Third, under the facts of this case, does jurisdiction over the foreign personal representative by Minnesota courts comply with the statutory standards of the long-arm statute and comport with due process notions of fairness and substantial justice?

 The fact that an alleged tortfeasor has left the state after a cause of action accrues and has established domicile elsewhere does not deprive this state of personal jurisdiction. *See Duresky v. Hanson,* 329 N.W.2d 44, 47 (Minn.1983). The determination of whether personal jurisdiction exists is a question of law. *See Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411–12 (Minn.1992) (stating that the district court does not have discretion in exercise of personal jurisdiction); *Stanek v. A.P. I., Inc.,* 474 N.W.2d 829, 832 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 31, 1991), *cert. denied,* 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). When jurisdiction is challenged, the plaintiff bears the burden of proving that sufficient contacts exist with the forum state to support personal jurisdiction. *Larson v. Dunn,* 460 N.W.2d 39, 43 (Minn. 1990) (citing *Hardrives, Inc. v. City of La-Crosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976)). The allegations of the complaint, together with any supporting evidence, must be viewed as true for purposes of determining whether plaintiff has made a prima facie showing of personal jurisdiction. *Larson,* 460 N.W.2d at 43; *Hardrives,* 307 Minn. at 293, 240 N.W.2d at 816. Doubt should be resolved in favor of retention of jurisdiction. *Hardrives,* 307 Minn. at 296, 240 N.W.2d at 818.

 We first address the issue of whether Minnesota's long-arm statute applies to grant

jurisdiction over the foreign personal representative of a deceased nonresident who is alleged to have committed acts of unpermitted, harmful and offensive sexual contact in Minnesota. Under Minnesota law, a cause of action against a deceased defendant survives to the personal representative of the deceased defendant. Minn.Stat. § 573.01 (1994). Aufderhaar, the duly-appointed personal representative of Birnbaum's estate, was personally served with V.H.'s summons and complaint in Texas, the state of her appointment, and is the proper person against whom to assert jurisdiction pursuant to section 573.01. In order to subject a foreign personal representative such as Aufderhaar to jurisdiction in Minnesota, the foreign personal representative must come within the ambit of the long-arm statute, and the exercise of jurisdiction must comport with constitutional due process requirements. *Larson*, 460 N.W.2d at 43.

■ Minnesota's long-arm statute provides that commission of any act in Minnesota causing injury subjects an individual or the individual's personal representative to personal jurisdiction up to the limits of "fairness and substantial justice":

> *Subdivision 1.* As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:
>
> * * *
>
> (c) Commits any act in Minnesota causing injury or property damage,
>
> * * *
>
> subject to the following exceptions when no jurisdiction shall be found:
>
> (1) Minnesota has no substantial interest in providing a forum; or
>
> (2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn.Stat. § 543.19, subd. 1 (1994). The Minnesota legislature intended the long-arm statute to have "the maximum extraterritorial effect allowed under the due process clause of the federal constitution." *Rostad v. On–Deck, Inc.*, 372 N.W.2d, 717, 719 (Minn.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985) (citing *Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1982)).

Prior to the enactment of the long-arm statute in 1967, we held that a foreign representative in his capacity as representative of an estate may not be sued in any jurisdiction outside the state in which he was appointed. *McAndrews v. Krause*, 245 Minn. 85, 90, 71 N.W.2d 153, 157 (Minn.1955). An exception to this rule allows jurisdiction where, under certain circumstances, assets are within the forum state's jurisdiction and the action is of an equitable nature. *Id.* Aufderhaar contends that the *McAndrews* rule applies here to preclude jurisdiction over her because she was appointed personal representative of Birnbaum's estate in Texas and Wisconsin, but not in Minnesota. V.H. argues that *McAndrews* is superseded by the long-arm statute. The court of appeals held it was consistent with *McAndrews* to conclude that Minnesota's long-arm statute permits jurisdiction over a deceased nonresident's personal representative if the nonresident would have been subject to jurisdiction if he or she were alive. This court has not yet addressed the question whether Minnesota's long-arm statute, enacted twelve years after *McAndrews* was decided, supersedes the common law rule stated in *McAndrews*.

Other jurisdictions with long-arm statutes similar to Minnesota's statute have held that a foreign or nonresident personal representative may be sued in a jurisdiction outside the state of appointment if the complaint sets forth facts sufficient to show commission of an act enumerated in the long-arm statute. For example, in analyzing Connecticut's long-arm statute, a statute containing language substantially similar to Minnesota's, the Connecticut Supreme Court held that:

> the common-law rule that an executor or administrator can sue and be sued only in

a jurisdiction in which he has been appointed has been modified by Connecticut's long-arm statute, * * * this statute authorizes jurisdiction over the executors of a foreign estate when the nonresident decedent, if alive, would have been subject to the jurisdiction of Connecticut pursuant to [the long-arm statute]. If the decedent were still alive while a nonresident, this court could have exercised jurisdiction over her; and her death does not alter this situation.

*Gandolfo v. Alford,* 31 Conn.Supp. 417, 333 A.2d 65, 69 (1975). The Connecticut court examined decisions from other states on this issue, and observed that the better reasoned cases and the weight of authority support jurisdiction against a foreign personal representative. *Id.* 333 A.2d at 67. The court concluded that the intent of long-arm statutes is to authorize service, in all types of actions, on foreign executors and administrators of a deceased person's estate if the deceased person would have been subject to in personam jurisdiction, if alive. *Id.* at 69.

In support of its conclusion that the common law rule must yield to legislative enactments which in appropriate circumstances extend jurisdiction over a foreign personal representative, the Connecticut Supreme Court cited the Illinois case of *Hayden v. Wheeler,* 33 Ill.2d 110, 210 N.E.2d 495, 497 (1965). In *Hayden,* the Illinois Supreme Court observed that the origin of the general rule of immunity of foreign executors or administrators is unclear. The rule may have had its roots in the conflict-of-laws principle that courts of one state should not interfere with the administration of an estate which is the subject of another state's jurisdiction. *Hayden,* 210 N.E.2d at 496–97. The court noted that, whatever the basis of the rule, courts have almost unanimously held that the rule must give way to "legislative enactments which extend judicial jurisdiction over foreign administrators in appropriate instances, such as when the administrator's decedent has committed a tortious act in the forum state." *Id.* at 497 (citations omitted). Numerous other courts have reached the same conclusion.[1]

 We agree with the reasoning set out in *Hayden* and *Gandolfo.* If jurisdiction does not extend to foreign personal representatives, persons injured in Minnesota would have redress against a living nonresident tortfeasor, but no remedy if the tortfeasor dies and leaves a foreign estate and foreign personal representative. *See Hayden,* 210 N.E.2d 495; *Crosson,* 745 F.2d at 900 ("the legislature necessarily rejected the possibility that personal jurisdiction might disappear with the fortuitous death of an individual defendant."). We hold that the long-arm statute supersedes the common law rule stated in *McAndrews* and that a foreign personal representative is subject to jurisdiction under Minnesota's long-arm statute if one of the acts enumerated in the statute has been alleged in the complaint. If the conduct of the decedent is the subject of the complaint, the decedent's foreign personal representative is subject to in personam jurisdiction under the long-arm statute if the decedent would be subject to jurisdiction if alive.

II.

 Because Minnesota's long-arm statute does supersede the common law rule, we must next determine whether the contacts of Aufderhaar, the foreign personal representative, or those of the decedent, Birnbaum, are the proper subject of analysis under the stat-

---

1. *See Crosson v. Conlee,* 745 F.2d 896 (4th Cir. 1984) (stating that the Virginia long-arm statute removed the common law prohibition against suing executors in a state other than that of their appointment), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *Texair Flyers, Inc. v. Dist. Ct.,* 180 Colo. 432, 506 P.2d 367 (1973) (holding for jurisdiction over a nonresident administrator under the long-arm statute where the complaint made a prima facie showing of the commission of a tort by decedent within the state); *Barr v. MacHarg,* 203 Kan. 612, 455 P.2d 516, 519 (1969) (holding that a nonresident who commits a tort within the state submits himself and the administrator of his estate to jurisdiction under Kansas long-arm statute); *Hossler v. Barry,* 403 A.2d 762, 765 (Me. 1979) ("whatever authority is needed to abrogate this common-law principle [of immunity of foreign administrator] is found in our long-arm statute"); *Altshuler Genealogical Serv. v. Farris,* 128 N.H. 98, 508 A.2d 1091 (1986) (applying the long-arm statute to a nonresident administrator); *Hanks v. Administrator of Estate of Jensen,* 531 P.2d 363 (Utah 1974) (applying Utah's long-arm statute to a foreign administrator).

ute. Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Rostad,* 372 N.W.2d at 719. Aufderhaar asserts that it is her contacts with Minnesota, and not those of Birnbaum, which should be the focus of the court's jurisdiction analysis. The district court agreed with Aufderhaar, analyzed her contacts, and found them insufficient to permit the exercise of jurisdiction over her. The court of appeals, however, analyzed Birnbaum's contacts with Minnesota, concluded his contacts to be sufficient to support jurisdiction, and reversed the district court.

▮▮▮ This court has not previously addressed the question of whose contacts establish jurisdiction when a foreign personal representative is sued in her capacity as personal representative of a decedent's estate. The long-arm statute grants jurisdiction over one who "commits any act in Minnesota causing injury or property damage." Minn.Stat. § 543.19, subd. 1(c) (1994). In this case, the one who committed the acts that comprise the basis of the complaint was the decedent, Bernard Birnbaum. Because acts comprising the cause of action are those of Birnbaum, we conclude it is Birnbaum's contacts which must be the subject of the jurisdiction analysis under the statute.

We find support for this conclusion in the Connecticut Supreme Court's decision in *Gandolfo,* 333 A.2d at 67–68. The Connecticut court considered and rejected the argument that the contacts of the "executor or administrator" of an estate were the proper subject of a jurisdiction analysis. The court held that the decedent's contacts are to be analyzed when "the decedent was the performer and the statute authorizes suit against the legal representative of the decedent." *Id.* The court went on to observe that the obvious thrust of the statute is the "mere acquisition of jurisdiction over individuals who perform certain enumerated acts within the state." *Id.* at 68.

Because we conclude that Birnbaum's contacts with Minnesota are the proper subject of analysis under the long-arm statute, it is unnecessary to analyze Aufderhaar's contacts with Minnesota. She did not commit any act in Minnesota causing injury to V.H. and her acts are not the subject of the complaint. She is the named defendant in the action only by virtue of her status as personal representative and because all actions which survive a decedent must be brought by or against the personal representative. Minn. Stat. § 573.01 (1994).

### III.

▮▮▮ Having determined that it is Birnbaum's contacts with Minnesota that are to be analyzed, we proceed to address the issue of whether, under the facts of this case, the exercise of in personam jurisdiction complies with statutory standards and due process. The exercise of in personam jurisdiction is proper only if it complies both with the statutory standards of the long-arm statute and the minimum standards of due process. *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 294 (Minn.1978). Subdivision 1(c) of the long-arm statute permits jurisdiction over a nonresident who "commits any act in Minnesota causing injury." Minn.Stat. § 543.19, subd. 1. Any contacts by nonresidents with Minnesota that are extensive enough to satisfy due process requirements for exercise of personal jurisdiction are also sufficient to authorize the exercise of in personam jurisdiction under the statute. *Marquette Nat'l Bank,* 270 N.W.2d at 294. As previously noted, due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Rostad,* 372 N.W.2d at 719. To establish the requisite minimum contacts with Minnesota, the defendant must have purposefully availed itself of the privilege of conducting activities within the jurisdiction. *Rostad,* 372 N.W.2d at 719 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). A nonresident's contacts with the forum state must be "such that he should

reasonably anticipate being haled into court there." *Larson,* 460 N.W.2d at 44.

■ We first determine if the acts alleged in V.H.'s complaint are acts enumerated in the long-arm statute. V.H. alleges that while both she and Birnbaum were residents of Minnesota, Birnbaum engaged in unpermitted, harmful and offensive sexual contact with her. She alleges that these acts caused her personal injury. V.H.'s allegations must be viewed as true in determining if there has been a prima facie showing of jurisdiction. *Larson,* 460 N.W.2d at 43. The acts alleged in support of V.H.'s cause of action were committed in Minnesota and caused the resulting injury, as required under subdivision 1(c) of the long-arm statute. Minn.Stat. § 543.19, subd. 1. We conclude that V.H. has properly alleged an act enumerated in the long-arm statute.

■ We next determine whether Birnbaum's contacts with Minnesota are such that the exercise of jurisdiction does not "violate fairness and substantial justice." Minn.Stat. § 543.19, subd. 1(d)(2) (1994); *see International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. In making this determination, we examine five factors: (1) the quantity of the contacts with the forum state, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with the contacts, (4) the interest of the state in providing a forum, and (5) the convenience of the parties. *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965); *Vikse v. Flaby,* 316 N.W.2d 276, 282 (Minn.1982); *Marquette Nat'l Bank,* 270 N.W.2d at 295; *Hardrives,* 307 Minn. at 294, 240 N.W.2d at 817. The court in *Marquette* determined that the first three factors are primary in the jurisdiction analysis, while the other two factors are secondary. *Marquette,* 270 N.W.2d at 295.

■ The first primary factor examines the quantity of contacts with the forum state. Birnbaum's contacts with Minnesota occurred over a long period of time. Birnbaum was a resident of Minnesota for the period between 1951 and 1962 when the conduct alleged in the complaint occurred. V.H. alleges two specific instances of unpermitted, harmful and offensive sexual contact with her

by Birnbaum. These contacts occurred in the Birnbaum home in Minneapolis during 1958 and 1960, when V.H. was seven and nine years old. In 1962, Birnbaum voluntarily submitted himself to the jurisdiction of the courts of Minnesota in consenting to a default divorce proceeding. We conclude that the quantity of Birnbaum's contacts with Minnesota are sufficient to support the exercise of jurisdiction.

■ The second primary factor examines the nature and quality of the contacts. The two instances of unpermitted sexual contact by Birnbaum constitute the gravamen of the complaint, and, as such, clearly support jurisdiction. Taking V.H.'s allegations as true, we conclude that when Birnbaum sexually abused V.H. in Minnesota, he could reasonably have expected to be subject to the jurisdiction of Minnesota courts for his conduct. *See Larson,* 460 N.W.2d at 44 (defendant's participation in abduction and concealment of plaintiff's daughter while Minnesota residents, and use of Minnesota post office in acting as go-between, were such that defendants could reasonably foresee being haled into a Minnesota court). Furthermore, Birnbaum's submission to a Minnesota court for his divorce, while an unrelated contact, demonstrates his willingness to accept the benefits and privileges of Minnesota law. *See id.* (unrelated contacts with Minnesota illustrate further intent to benefit from Minnesota law). The nature and quality of Birnbaum's contacts with Minnesota are sufficient to assert jurisdiction.

■ Aufderhaar argues that because Birnbaum had not resided in Minnesota for more than 33 years, the quantity and the nature and quality of his contacts is minimal, and that V.H.'s claim is time-barred. This argument lacks merit. The remoteness of the alleged sexual assault is a statute of limitations issue, not an issue of personal jurisdiction. With respect to the relationship between the limitations period and a jurisdiction analysis, this court has stated that, "[a]lthough some interplay exists between these two legal doctrines * * *, whether a claim is time barred is an issue separate from the issue of personal jurisdiction." *Larson,* 460

658

N.W.2d at 43 (quoting *Larson v. Dunn*, 449 N.W.2d 751, 759 (Minn.App.1990)).

■ The third primary factor is the source and connection of the cause of action with the contacts. Here, the cause of action arises directly from Birnbaum's contact with this state in the alleged unpermitted, harmful and offensive sexual contact. The conduct that forms the basis of the complaint is such that Birnbaum reasonably should have anticipated being sued in Minnesota courts. We conclude that the third primary factor, like the first two, weighs in favor of Minnesota's exercise of jurisdiction.

■ The two secondary factors to be examined are whether the state has an interest in jurisdiction and whether Minnesota is a convenient forum for the parties. Minnesota has a legitimate interest in providing a forum for its citizens to address tortious conduct and a legitimate concern for protection of its children from sexual molestation. *See Does 1–22 v. Roman Catholic Bishop of Fall River*, 509 N.W.2d 598 (Minn.App.1993) (one who perpetrates a sexual assault in Minnesota upon a minor can reasonably expect to be haled into court here). Although Aufderhaar asserts that it would be inconvenient for her to defend an action in Minnesota, we note that she concedes that the convenience factor favors neither party. Aufderhaar has submitted to jurisdiction in the neighboring state of Wisconsin by virtue of her appointment as personal representative in that state. Furthermore, expert witnesses likely to be called in this case are located in this jurisdiction. If the convenience factor tips the scale at all, it is in favor of jurisdiction.

■ The two secondary factors, like the three primary factors, support jurisdiction. We conclude that Birnbaum's contacts with Minnesota are more than sufficient to permit the exercise of jurisdiction under the five-factor test set out in *Hardrives*.

We affirm the court of appeals' decision, hold that the personal representative of the Estate of Bernard F. Birnbaum is subject to jurisdiction in Minnesota for purposes of this action, and remand this matter to the district court for further proceedings.

Affirmed.